814 So.2d 424 (2002)
Fritz MAJOR, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-1811.
Supreme Court of Florida.
March 28, 2002.
*425 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Michael Niemand, Bureau Chief, and Regine Monestime, Assistant Attorney General, Miami, Florida, for Respondent.
WELLS, C.J.
We have for review Major v. State, 790 So.2d 550, 553 (Fla. 3d DCA 2001), in which the Third District Court of Appeal certified the following question to be of great public importance:
WHETHER THE TRIAL COURT OR COUNSEL HAVE A DUTY TO ADVISE A DEFENDANT THAT [THE DEFENDANT'S] PLEA IN A PENDING CASE MAY HAVE SENTENCE ENHANCING CONSEQUENCES IF THE DEFENDANT COMMITS A NEW CRIME IN THE FUTURE.
We have jurisdiction, see art. V, § 3(b)(4), Fla. Const., answer the certified question in the negative, and approve the Third District's decision in this case.
In 1993, petitioner Fritz Major was charged with aggravated assault with a deadly weapon. Prior to his trial in the Eleventh Judicial Circuit Court in and for Dade County, Florida, Major, while represented by counsel, pled no contest to this charge. The trial court, after engaging Major in a plea colloquy, adjudicated him guilty and sentenced him to a term of eighteen months of incarceration. During the colloquy, the trial court did not advise Major that his plea could have sentence enhancing consequences if Major committed crimes in the future. After his release from state prison, Major committed a federal crime, which the United States Attorney for the Northern District of Florida successfully prosecuted. Major's federal sentence was enhanced from 210 months to 364 months due to his prior criminal adjudication in state court.
Major petitioned this Court for a writ of error coram nobis and attacked the validity of his 1993 plea on the theory that the trial court and his defense counsel failed to inform him of the future enhancement effect his state adjudication would have in a subsequent prosecution.[1] We transferred *426 the petition to the Eleventh Judicial Circuit Court, which court denied the petition, finding that the possible future enhancement effect of an adjudication resulting from a plea was a collateral consequence of the plea. The trial court also concluded that neither the trial court nor defense counsel had a duty to advise Major of collateral consequences to the plea. Major appealed the trial court's denial to the Third District.
Pursuant to this Court's decision in Wood v. State, 750 So.2d 592 (Fla.1999), the Third District considered Major's petition for writ of error coram nobis to be one filed pursuant to Florida Rule of Criminal Procedure 3.850. Adhering to its prior case law, see, e.g., State v. Fox, 659 So.2d 1324 (Fla. 3d DCA 1995), the Third District held that neither the trial court nor defense counsel had a duty to anticipate a defendant's future recidivism. See Major, 790 So.2d at 551. Agreeing with the trial court, the Third District concluded that future sentence enhancement is a collateral and not a direct consequence of a plea, and therefore neither the trial court nor defense counsel was under a duty to advise Major of this potential consequence at the time he pled to the state crime. See id. at 552. In so holding, the Third District distinguished an apparent statement to the contrary in this Court's opinion in State v. Perry, 786 So.2d 554, 557 (Fla.2001). See Major, 790 So.2d at 552. Finding the statement in Perry to be dicta, the Third District held that Perry did not overrule that district's case law holding that potential future sentence enhancement is a collateral and not a direct consequence of a plea. See Major, 790 So.2d at 552. Thus, the Third District denied Major postconviction relief but certified the instant question so that it may be authoritatively resolved. See id. at 553.

ANALYSIS
We conclude that we answered the certified question in the negative in our decision in State v. Ginebra, 511 So.2d 960 (Fla.1987), and that decision continues to correctly state the law on this issue. In Ginebra we explained:
It is clear under both state and federal decisions that the trial court judge is under no duty to inform a defendant of the collateral consequences of his guilty plea. Florida Rule of Criminal Procedure 3.172(c), and its counterpart Federal Rule of Criminal Procedure 11(c), set forth those areas which the trial court judge must inquire of the defendant before accepting a guilty plea. The trial judge's obligation to ensure that the defendant understands the direct consequences of his plea has been consistently interpreted to encompass only those consequences of the sentence which the trial court can impose....
. . . .
We prefer the reasoning expressed in the federal cases and therefore disapprove [Edwards v. State, 393 So.2d 597 (Fla. 3d DCA 1981) ]. The focus of whether counsel provided constitutionally effective assistance in the context of a plea is whether counsel provided his client "with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the *427 prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir.1984). A defendant's lack of knowledge that a plea of guilty may lead to deportation does nothing to undermine the plea itself which is, in effect, "a confession in open court as to the facts alleged." United States v. Sambro, 454 F.2d at 921. See Brady v. United States, 397 U.S. 742, 748[, 90 S.Ct. 1463, 25 L.Ed.2d 747] (1970) ("[c]entral to the plea ... is the defendant's admission in open court that he committed the acts charged").
We therefore hold that counsel's failure to advise his client of the collateral consequence of deportation does not constitute ineffective assistance of counsel. We note that there are numerous other collateral consequences of which a defendant does not have to be knowledgeable before his plea is considered knowing and voluntary. See [Michel v. United States, 507 F.2d 461, 465 n. 4 (2d Cir.1974) ].
Id. at 960-62 (footnotes omitted).[2]
Our decision in Ginebra is consistent with the United States Supreme Court's decision in Mabry v. Johnson, 467 U.S. 504, 508-09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), in which the Court reasoned:
It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligencebecause each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargainedfor exchange. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Id., at 755[, 90 S.Ct. 1463] (quoting Shelton v. United States, 246 F.2d 571, 572, n. 2 (CA5 1957)) (en banc) (in turn quoting 242 F.2d 101, 115 (Tuttle, J., dissenting to panel opinion)), reversed *428 on other grounds, 356 U.S. 26[, 78 S.Ct. 563, 2 L.Ed.2d 579] (1958).
(Footnotes omitted.)
The Eleventh Circuit Court of Appeals cited to the Supreme Court's decision in Mabry in exploring a similar issue:
Moreover, we note that the voluntariness of the plea depends only upon whether the defendant is aware of the direct consequences of the plea. Mabry v. Johnson, 467 U.S. 504, 509[, 104 S.Ct. 2543, 81 L.Ed.2d 437] (1984). For example, the use of a plea as a sentencing enhancement for another crime is considered a collateral, not a direct, consequence. Wright v. United States, 624 F.2d 557 (5th Cir.1980).
Heath v. Jones, 941 F.2d 1126, 1139 n. 16 (11th Cir.1991).
Since our decision in Ginebra, Florida's district courts of appeal have consistently held that the trial court and counsel are not required to inform the defendant of potential sentence enhancing effects to the sentence of a crime committed in the future because such potential consequences are collateral to the plea. The Third District in its 1995 Fox opinion reasoned:
One of the purposes for the plea colloquy between the court and the defendant is to ensure that the defendant understands the consequences of his [or her] plea. Trenary v. State, 473 So.2d 820, 822 (Fla. 2d DCA 1985), review denied, 486 So.2d 598 (Fla.1986). However, a judge is required to inform a defendant only of the direct consequences of his [or her] plea and is under no duty to apprise him [or her] of any collateral consequences. State v. Ginebra, 511 So.2d 960, 961-62 (Fla.1987). A direct consequence is one that has a "definite, immediate, and largely automatic effect on the range of the defendant's punishment." Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982) (citations omitted).
"[A] plea's possible enhancing effect on a subsequent sentence is merely a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea." Id. at 463 (citation omitted); see also United States v. Jordan, 870 F.2d 1310, 1318 (7th Cir.), cert. denied, 493 U.S. 831[, 110 S.Ct. 101, 107 L.Ed.2d 65] (1989). The sentencing court is not required "to anticipate a defendant's recidivism." United States v. Woods, 870 F.2d 285, 288 (5th Cir.1989). Therefore, the fact that the felony adjudication might be used against the defendant in a subsequent federal prosecution was a collateral consequence of the plea and was not an issue the trial judge was required to cover in the plea colloquy.
659 So.2d at 1327. In Bethune v. State, 774 So.2d 4, 5 (Fla. 2d DCA 2000), the Second District Court of Appeal added:
Trial counsel need only advise a defendant of direct consequences of a plea. See State v. Ginebra, 511 So.2d 960 (Fla. 1987), superseded on other grounds by Florida Rule of Criminal Procedure 3.172; State v. De Abreu, 613 So.2d 453, 453 (1993) (holding "In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992 (Fla.1988) ... supersede[s] Ginebra to the extent of any inconsistency"). Counsel is not required to inform his [or her] client of potential sentence-enhancing consequences of his [or her] plea because it is a collateral consequence. See Rhodes v. State, 701 So.2d 388 (Fla. 3d DCA 1997). Thus, failure to do so cannot substantiate an ineffective assistance of counsel claim. Id. at 389. Similarly, as a collateral consequence, use of a conviction to enhance a future sentence does not render *429 a plea involuntary. See Sherwood v. State, 743 So.2d 1196 (Fla. 4th DCA 1999). Therefore, the trial court's order is affirmed.
The Fourth District Court of Appeal has also explained:
Florida Rule of Criminal Procedure 3.170(k) requires the trial court to determine that a defendant's plea is voluntary. One aspect of a voluntary plea is that the defendant understand the reasonable consequences of his [or her] plea, including "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Fla. R.Crim. P. 3.172(c)(1); Ashley v. State, 614 So.2d 486, 488 (Fla. 1993). However, a trial court is required to inform a defendant only of the direct consequences of the plea, and is under no duty to advise the defendant of any collateral consequences. See State v. Ginebra, 511 So.2d 960, 961 (Fla. 1987); State v. Fox, 659 So.2d 1324, 1327 (Fla. 3d DCA 1995), rev. den., Fox v. State, 668 So.2d 602 (Fla.1996). In Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982), this court adopted the fourth circuit's definition of a "direct consequence" of a plea:
"The distinction between `direct' and `collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.) cert. denied, 414 U.S. 1005[, 94 S.Ct. 362, 38 L.Ed.2d 241] (1973). Daniels v. State, 716 So.2d 827, 828 (Fla. 4th DCA 1998).
Major argues that in Ashley v. State, 614 So.2d 486 (Fla.1993), we began to expand those consequences of a plea which a trial court must be assured a defendant understands before allowing a plea, even though those consequences are identified as collateral. This expansion, according to Major, has transformed the direct versus collateral analysis into an examination of whether a consequence is reasonably expected or possible from the plea. For support, Major cites to the First District Court of Appeal's decision in Freels v. State, 701 So.2d 1207, 1209 (Fla. 1st DCA 1997), in which the First District concluded that this Court's decision in Ashley transformed otherwise collateral consequences to "equal footing with direct consequences." We do not agree with Major's contention.
The defendant in Ashley appealed the imposed habitual felony offender sentence, which was greater than the statutory maximum for the crime charged but was less than the maximum possible sentence for a habitual felony offender. Ashley, 614 So.2d at 487. Importantly, the defendant pled no contest to the charged crime prior to the State's filing of a notice to seek enhanced punishment on account of the defendant's being a habitual offender. See id. While we rejected the State's argument that no notice was required because habitualization is a collateral and not a direct consequence of a plea, see id. at 487-88, our resolution in Ashley did not transform the direct versus collateral analysis. Rather, we resolved Ashley on the basis that for a plea to be knowing and voluntary, the defendant must understand the maximum penalty provided by law. See 614 So.2d at 489.[3] In the case of *430 habitualization, we held the maximum penalty provided by law was the maximum penalty under the habitualization statute and not the statutory or sentencing guideline maximums. See 614 So.2d at 489. We vacated the habitual felony offender sentence in Ashley because that sentence was greater than what the defendant was advised. See id. at 490-91. We then held:
In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: 1) The defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences [note] of habitualization.
[Note]. The defendant should be told of his or her eligibility for habitualization, the maximum habitual offender term for the charged offense, the fact that habitualization may affect the possibility of early release through certain programs, and where habitual violent felony offender provisions are implicated, the mandatory minimum term.
Id. at 490. In Ashley we did not recede from Ginebra's specific holding that a trial court is not under a duty to inform a defendant of the collateral consequences of a guilty or no contest plea. See Ginebra, 511 So.2d at 961.[4]
We do agree, though, with Major and the Second District's opinion in Bismark v. State, 796 So.2d 584 (Fla. 2d DCA 2001), written by Judge Altenbernd, that when this Court's recent opinion in State v. Perry, 786 So.2d 554 (Fla.2001), is read in conjunction with this Court's opinion in Wood v. State, 750 So.2d 592 (Fla.1999), it appears that this Court receded from our direct versus collateral analysis in Ginebra. Upon our close examination of this issue, we hold that we did not so recede.
We acknowledge that in Perry we made the statement:
This Court accordingly has permitted a writ of error coram nobis where the petitioner asserted he was not informed his plea could constitute a "prior offense" in subsequent proceedings. See Wood v. State, 750 So.2d 592 (Fla.1999).
Perry, 786 So.2d at 557. However, in neither Perry nor Wood were we focusing on the substantive issue of direct versus collateral consequences as we did in Ginebra. In Perry, our focus was on whether the writ of error coram nobis was the appropriate procedural vehicle for obtaining the requested relief, which was an attack on the voluntariness of a plea. See 786 So.2d at 556. Furthermore, in Wood, our focus was on the time limit for filing a petition for a writ of error coram nobis. See 750 So.2d at 594. In neither decision did we cite to Ginebra or otherwise alter the holdings in Ginebra.
In order to clarify the state of the law, we recede from those statements in Perry that conflict with Ginebra. We also expressly *431 hold that this Court did not recede from Ginebra in our decision in Wood.
In specific answer to the certified question, we hold that neither the trial court nor counsel has a duty to advise a defendant that the defendant's plea in a pending case may have sentence enhancing consequences on a sentence imposed for a crime committed in the future. We expressly approve the statement set forth in the Third District's opinion in this case:
[A] judge is required to inform a defendant only of the direct consequences of his [or her] plea and is under no duty to apprise him [or her] of any collateral consequences. A direct consequence is one that has a "definite, immediate, and largely automatic effect on the range of the defendant's punishment."
Major, 790 So.2d at 551 (quoting Fox, 659 So.2d at 1327). We approve the less restrictive definition of direct consequence used by Florida's district courts as stated in Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982) (quoting Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.1973)):[5]
The distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.

CONCLUSION
Accordingly, we answer the certified question in the negative and approve the Third District's decision in this case. We recede from those statements in State v. Perry, 786 So.2d 554, 557 (Fla.2001), that conflict with Ginebra.
It is so ordered.
HARDING, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only with an opinion.
ANSTEAD, J., concurs in result only.
SHAW, J., dissents with an opinion.
PARIENTE, J., concurring in result only.
I agree with the majority's result because I conclude as a matter of law that in this case neither the trial court nor the trial counsel had an absolute duty to advise the defendant that a present plea might impact sentencing in other crimes that might be committed in the future. I do not agree, however, that the issue of what should be included in a plea colloquy should be resolved based on a rigid definition of direct versus collateral consequences.
I am also of the opinion that it would be prudent to consider prospectively an amendment to the standard plea colloquy to include a warning that the plea may be used to enhance punishment for any crime. Certainly, with the proliferation of sentencing enhancement statutes, as Justice Shaw points out in his dissent, there is the very real possibility that if a defendant commits a future offense, the prior conviction will have dire consequences in terms of the length of the subsequent sentence. In addition, there are cases where the defendant has committed other crimes for *432 which he or she has not been sentenced at the time the defendant enters a plea.
I also have specific concerns with regard to the plea colloquy in cases involving juveniles. We know that many juveniles waive their right to counsel before entry of a plea, especially where the sentence may be one of community control rather than commitment. Indeed, our Rule of Juvenile Procedure 8.075(a) requires that before a trial court accepts a plea, the trial court must ensure "that the plea is made voluntarily and with a full understanding of the nature of the allegations and the possible consequences of such plea." (Emphasis supplied.) Therefore, particularly in the area of juvenile pleas, I would conclude that during the plea colloquy the juvenile should be advised that the adjudication of delinquency may impact the severity of a future sentence.
Thus, I would recommend that this matter be studied by both the Florida Bar's Rules of Juvenile Procedure Committee and Rules of Criminal Procedure Committee.
SHAW, J., dissenting.
Because of the extraordinarily onerous consequences of sentencing enhancement, I question whether a plea of guilty or nolo contendere can be "knowing and intelligent" if a defendant is not told beforehand of those consequences by either the court or counsel. I would refer this matter to the Criminal Procedure Rules Committee of The Florida Bar to formulate a proposed amendment to rule 3.172 addressing this issue.

I. "KNOWING AND INTELLIGENT"
This Court in Ashley v. State, 614 So.2d 486 (Fla.1993), delineated certain fundamental rights that are at stake in the plea process:
In Boykin v. Alabama, 395 U.S. 238[, 89 S.Ct. 1709, 23 L.Ed.2d 274] (1969), the United States Supreme Court noted that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." A number of important federal rights are implicated in the plea process:
Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights ....

Id. 395 U.S. at 243[, 89 S.Ct. 1709]. Before a trial judge can accept a plea of guilty or nolo contendere, there must be "an affirmative showing that it was intelligent and voluntary," for "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."
Ashley, 614 So.2d at 488 (citations omitted). The Court further explained what the phrase "knowing and intelligent" means:
In keeping with Boykin, this Court has ruled that in order for a plea to be knowing and intelligent the defendant must understand the reasonable consequences of the plea ....
Ashley, 614 So.2d at 488 (emphasis added).

II. RULE OF CRIMINAL PROCEDURE 3.172
This Court in Florida Rule of Criminal Procedure 3.172 memorialized the requirements *433 governing the acceptance of pleas. This rule was adopted in 1977 and provided in relevant part:
(c) Except where a defendant is not present for a plea ... the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he understands the following:
(i) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
(ii) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceedings against him and, if necessary, one will be appointed to represent him; and
(iii) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to compel attendance of witnesses on his behalf, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(iv) That if he pleads guilty, or nolo contendere without express reservation of the right to appeal, he gives up his right to appeal all matters relating to the judgment, including the issue of guilt or innocence, but he does not impair his right to review by appropriate collateral attack.
(v) That if he pleads guilty or is adjudged guilty after a plea of nolo contendere there will not be further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and
(vi) That if he pleads guilty or nolo contendere, the trial judge may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury; and
(vii) The complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result.
Florida Bar re Florida Rules of Criminal Procedure, 343 So.2d 1247, 1254-55 (Fla. 1977).
Subsequently, the Court in State v. Ginebra, 511 So.2d 960 (Fla.1987), held that a plea may be considered knowing and voluntary even though the defendant is not told that in certain cases a plea of guilty or nolo contendere may result in deportation. The following year, however, the Court superseded this ruling and adopted the following amendment to rule 3.172:
(c)(viii) That if he or she pleads guilty or nolo contendere the trial judge must inform him or her that, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Naturalization and Immigration Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a Untied States citizen, as this admonition shall be given to all defendants in all cases.
In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992, 994 (Fla.1988) (underlining omitted). Other than this deportation amendment, rule 3.172 has remained virtually unchanged in the twenty-five years since its inception.[6]

*434 III. CHANGES IN FLORIDA LAW
The criminal law in Florida, on the other hand, has changed dramatically during this period. The Legislature has enacted sundry laws that have had a major impact on the "reasonable consequences" of a guilty or nolo plea. Some of these changes affecting a defendant's liberty interest are clearly as significant as the possibility of deportation.
For instance, under the sentencing guidelines and Criminal Punishment Code, a prior conviction must be considered when calculating the term of imprisonment for a pending offense.[7] Under the habitual felony offender statute, courts may impose the following terms of imprisonment based on a defendant's prior record: ten years, thirty years, or life, depending on the degree of the pending offense.[8] Under the habitual violent felony offender statute, courts may impose the same terms of imprisonment but with the following mandatory minimum terms: five years, ten years, and fifteen years.[9]
Penalties under several statutes are unusually severe. Under the prison releasee reoffender statute, courts must impose the following terms of imprisonment based on a defendant's prior record: five years, fifteen years, thirty years, or life, depending on the degree of the pending offense, and defendants "must serve 100 percent of the court-imposed sentence."[10] Under the three-time violent felony offender statute, courts must impose terms of imprisonment of five years, fifteen years, thirty years, or life, and all of these terms are "mandatory minimum term[s] of imprisonment."[11] And finally, under the violent career criminal statute courts must impose terms of imprisonment of fifteen years, forty years, or life, with mandatory minimum terms of ten or thirty years.[12]
In light of these changes in the law, I question whether a plea of guilty or nolo contendere can be truly "knowing and intelligent" if a defendant is not apprised beforehand of the reasonable consequences of sentencing enhancement. In point of fact, the defendant in the present case pled nolo contendere to an offense and was sentenced to eighteen months' imprisonment. He later was convicted of a subsequent crime and, because of his prior plea, was given a twelve-year enhancement on the sentence for the later offense. In other words, based on the prior offense, the defendant was given an enhancement that was eight times greater than the sentence he originally agreed to for that offense. At the time he entered his plea, he was sixteen years old and the court did not inform him of the reasonable consequences of enhancement.
It is very much in society's interestit seems to meto provide more not less information in such cases. More information not only will ensure the knowing and intelligent nature of the resulting plea but also will inform the defendant of the adverse consequences of further criminal conduct. This Court in Williams v. State, 316 So.2d 267, 270-71 (Fla.1975), explained *435 that there is no place in the plea process for haste or summary action:
A plea of guilty is both a confession and a conviction. By entering a plea of guilty, the defendant is consenting to the judgment of conviction. Clearly, it is an extremely important step in the criminal process and should not be hurried or treated summarily.
Williams, 316 So.2d at 270-71 (citation omitted). A plea agreement is not a State-sponsored "shell game." Rather, the plea processproperly administered and based on full disclosureis an opportunity for the court to inform the defendant of the severe consequences of criminal conduct.

IV. THIS COURT'S PRECEDENT
I disagree with the majority opinion's analysis of this Court's precedent in several respects. First, the majority opinion relies on State v. Ginebra, 511 So.2d 960 (Fla.1987), for the proposition that a court and counsel need only inform a defendant of the direct, not collateral, consequences of a plea. As noted above, the Court in Ginebra so ruled and held that the possibility of deportation is a collateral consequence of a plea. One year later, however, this Court superseded Ginebra and amended rule 3.172 to require the exact opposite. Rule 3.172 now requires courts to inform defendants of the possibility of deportation, regardless of its "collateral" nature.[13] I would rule similarly in the present case, for sentencing enhancement can be far more onerous than deportation, as explained above.
Second, this Court in Ashley v. State, 614 So.2d 486 (Fla.1993), has already addressed a facet of this issue. There, the Court was faced with the question of whether pre-plea disclosure is required for one particular form of sentencing enhancement, i.e., habitualization.[14] The Court held that before a court can accept a plea of guilty or nolo contendere in a case where the State is seeking habitualization the court must confirm that the defendant is aware of the possibility and "reasonable consequences" of habitualization:
The defendant should be told of his or her eligibility for habitualization, the maximum habitual offender term for the charged offense, the fact that habitualization may affect the possibility of early release through certain programs, and, where habitual violent felony offender provisions are implicated, the mandatory minimum term.
Ashley, 614 So.2d at 490 n. 8.[15] Each of the above consequences is a collateral, not direct, consequence of a plea, for the parties do not know beforehand if the court is going to impose an habitual offender term. I would require similar pre-plea disclosure for the reasonable consequences of sentencing enhancement in general.

V. CONCLUSION
I agree with the majority opinion that, as a general principle, courts must inform a defendant of only the direct, not collateral, consequences of a plea. Where, however, a collateral consequence is unusually severe, courts also should inform a defendant *436 of that consequence. Sentencing enhancement is such a consequence. Under the enhancement schemes noted above, prior convictions can result in extraordinarily onerous prison terms.
Just as courts must inform defendants of the possibility of deportation and the reasonable consequences of habitualization, so too courts should inform defendants of the reasonable consequences of sentencing enhancement in general.[16] Because this new rule is an "evolutionary refinement" in the law, I would not apply it to the present defendant or other final cases.[17] Rather, I would apply this rule to all plea agreements taking place after mandate issues in this case. As noted above, I would refer this matter to the Criminal Procedure Rules Committee of The Florida Bar.
NOTES
[1] Major filed the petition for writ of error coram nobis within the window established by this Court's opinion in Wood v. State, 750 So.2d 592, 595 (Fla.1999) ("[A]ll defendants adjudicated prior to this opinion shall have two years from the filing date within which to file claims traditionally cognizable under coram nobis."), to challenge the validity of a prior conviction or face a procedural bar. Major is not otherwise barred from filing the claim as he never was in custody for more than two years and has not previously attacked the validity of his plea. See id. at 597.
[2] Florida Rule of Criminal Procedure 3.172(c) was amended following the Ginebra decision to add subdivision (8) so that now by rule a trial court must address the defendant and determine whether he or she understands that the plea could have deportation consequences. See In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992, 992 (Fla.1988). The rule requires the court to determine that the defendant understands

that if [the defendant] pleads guilty or nolo contendere the trial judge must inform him or her that, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a United States citizen, as this admonition shall be given to all defendants in all cases.
Fla. R.Crim. Pro 3.172(c)(8).
This rule amendment superseded our decision as to deportation. See State v. De Abreu, 613 So.2d 453, 453 (Fla.1993). This provision was amended prior to this Court's decision in Peart v. State, 756 So.2d 42 (Fla.2000).
[3] In Ashley, we reviewed Williams v. State, 316 So.2d 267 (Fla.1975), and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), regarding the requirement that a defendant's plea must be knowing and voluntary. See 614 So.2d at 488-89. In Williams, which was based upon the mandates of Boykin, we held that for a plea to be knowing and voluntary a defendant must understand the maximum penalty that may be imposed for the charged offense. See 316 So.2d at 271.
[4] In State v. Wilson, 658 So.2d 521 (Fla. 1995), we applied Ashley to a case where the petitioner alleged that at his plea colloquy the trial court misinformed the petitioner that the maximum penalty was fifteen years, even though the maximum penalty under the habitual offender statute was approximately thirty years. Under the Ashley analysis, we allowed petitioner to withdraw his plea. See Wilson, 658 So.2d at 523. Likewise, in Wilson, we did not recede from the direct versus collateral consequence analysis in Ginebra.
[5] Florida's district courts uniformly have applied the definition of direct consequence stated in Zambuto. See, e.g., Watrous v. State, 793 So.2d 6, 9 (Fla. 2d DCA 2001); Whipple v. State, 789 So.2d 1132, 1138 (Fla. 4th DCA 2001); Boutwell v. State, 776 So.2d 1014, 1016 n. 2 (Fla. 5th DCA 2001); State v. Fox, 659 So.2d 1324, 1327 (Fla. 3d DCA 1995); Blackshear v. State, 455 So.2d 555, 556 (Fla. 1st DCA 1984).
[6] Provisions within the rule were titled and renumbered to conform to a uniform system, and changes were made to render the rule gender neutral. See In re Amendments to Florida Rules of Criminal Procedure, 606 So.2d 227 (Fla.1992); see also Amendments to Florida Rules of Criminal Procedure, 685 So.2d 1253 (Fla.1996) (redesignating an internal cross-reference).
[7] See ch. 921, Fla. Stat. (2001).
[8] See § 775.084(4)(a), Fla. Stat. (2001).
[9] See § 775.084(4)(b), Fla. Stat. (2001).
[10] See §§ 775.082(9)(a)(3)-(b), Fla. Stat. (2001).
[11] See § 775.084(4)(c), Fla. Stat. (2001).
[12] See § 775.084(4)(d), Fla. Stat. (2001).
[13] See State v. DeAbreu, 613 So.2d 453, 453 (Fla.1993) ("[T]he rules changes adopted by our decision In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992 (Fla.1988) ... superseded Ginebra to the extent of any inconsistency.").
[14] The question in Ashley concerned pre-plea disclosure of the consequences of sentencing enhancement at the time of a subsequent offense; the question in the present case concerns pre-plea disclosure at the time of a prior offense.
[15] We later ruled that these requirements are mandatory, not aspirational. See State v. Wilson, 658 So.2d 521 (Fla.1995).
[16] A simple statement such as the following should suffice: "Should you commit a crime in the future, a plea of guilty of nolo contendere on the present offense may be used to increase the penalty for the future crime. The increase may be substantial, in some cases extending up to and including life imprisonment."
[17] See Witt v. State, 387 So.2d 922, 929-30 (Fla.1980) (holding that only "jurisprudential upheavals" and not "evolutionary refinements" in the law may be applied to final decisions).