887 So.2d 1214 (2004)
Gerald Lynn BATES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-1481.
Supreme Court of Florida.
October 21, 2004.
*1215 Nancy A. Daniels, Public Defender and P. Douglas Brinkmeyer, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, James W. Rogers, Tallahassee Bureau Chief Criminal Appeals, Trisha E. Meggs, Assistant Attorney General, and Daniel A. David, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
We review Bates v. State, 818 So.2d 626, 631 (Fla. 1st DCA 2002), which certified the following question to be of great public importance:
WHETHER ALLEGATIONS OF AFFIRMATIVE MISADVICE BY TRIAL COUNSEL ON THE SENTENCE-ENHANCING CONSEQUENCES OF A DEFENDANT'S PLEA FOR FUTURE CRIMINAL BEHAVIOR IN AN OTHERWISE FACIALLY SUFFICIENT MOTION ARE COGNIZABLE AS AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. However, we do not answer the certified question because we find that Bates' petition for writ of error coram nobis was untimely and is procedurally barred.
The district court's opinion sets forth the following material facts:
On September 7, 1999, Appellant filed a Petition for Writ of Error Coram Nobis, seeking to have his 1990 conviction vacated. The trial court construed the petition as a Motion for Post-conviction Relief filed pursuant to Florida Rule of Criminal procedure 3.850. Appellant alleged that he entered a plea of guilty to one count of constructive possession of cocaine on January 23, 1990, and was sentenced to 69 days in jail, with credit for 69 days served, to be followed by 12 months' probation, with early termination upon payment of court costs. His probation was terminated on February 7, 1991. He was subsequently convicted of an undisclosed felony in 1994, and his 1990 conviction and sentence was used as a predicate offense to habitualize him. In his motion, Appellant alleged as his first ground for relief that his trial counsel *1216 misadvised him on the future sentencing-enhancing consequences of his plea. He contended that upon questioning his counsel about the ramifications of his plea, his counsel assured him that his offense could never be used against him and that convictions for possession of controlled substances were excluded from use as a prior offense in the habitual offender statutes. He further alleged that he would not have entered a plea but would have proceeded to trial had he been advised of the possible future sentence-enhancing consequences of his plea.
Bates, 818 So.2d at 627-28. The district court held, based upon Wood v. State, 750 So.2d 592 (Fla.1999), that the trial court erred in finding that Bates' claim of affirmative misadvice was untimely. The district court held:
However, the trial court erred in finding that Appellant's claim of affirmative misadvice was untimely under Wood. Wood provided that all defendants previously adjudicated would have two years from May 27, 1999, in which to file rule 3.850 motions raising claims traditionally cognizable under coram nobis. Here, Appellant was not in custody on the conviction he now challenges when he learned that counsel misadvised him, and so relief was unavailable to him under rule 3.850 as it contained a requirement, until Wood, that the movant be in custody. In fact, Appellant was never in custody for two years under his initial conviction and his motion filed on September 7, 1999, was filed within the two-year filing window under Wood.

Bates, 818 So.2d at 628-29. We do not agree. The district court's decision conflicts with this Court's decision in Lawson v. State, 231 So.2d 205, 206 (Fla.1970), and errs in holding that this Court's decision in Wood applies to Bates' petition for a writ of error coram nobis.
The district court's specific error was in construing the "in custody" provision in Florida Rule of Criminal Procedure 3.850 to mean Bates being "in custody on the conviction he now challenges." The provision in rule 3.850 prior to the amendment to the rule in Wood was a "prisoner in custody under sentence of a court established by the laws of Florida." Fla. R.Crim. P. 3.850(a) (1993). This was the rule which was in effect in 1994, when Bates was taken into custody, convicted of a felony, and sentenced to prison as a habitual offender. Bates remained in custody under the habitual offender sentence from 1994 through the date he filed his petition for a writ of error coram nobis in 1999.
We construed the "in custody" requirement of rule 3.850[1] in Lawson, where the issue was whether a person "in custody" for a subsequent crime could attack a conviction for which the person had been paroled. We held that "[a] prisoner serving consecutive sentences is `in custody' under any one of [the sentences] for purposes of Rule 1.850, Florida Rules of Criminal Procedure." Id. at 207. In so holding we receded from Fretwell v. Wainwright, 185 So.2d 701 (Fla.1966), in which the Court had held that a defendant in custody for one crime could not attack a conviction for which he was not presently in custody.
Subsequent to Lawson, the "in custody" requirement of the rule was held by the district courts to cover a prisoner's postconviction attack of a conviction for which the prisoner was not at that time in custody when the person was at the time "in custody" for a sentence by a Florida court that was enhanced by the prior conviction. *1217 In Weir v. State, 319 So.2d 80, 81 (Fla. 2d DCA 1975), the court held:
The customary vehicle for post-conviction relief is Rule 3.850, [Fla. R.Crim. P.]. By its terms, this rule is applicable only to persons in custody. The custody required by the rule need not be under the sentence being attacked where the movant contends the sentence he is serving was enhanced by the conviction he seeks to have set aside.
Similar holdings by the district courts are in Howarth v. State, 673 So.2d 580 (Fla. 5th DCA 1996); McArthur v. State, 597 So.2d 406 (Fla. 1st DCA 1992); and Lawrence v. State, 404 So.2d 1129 (Fla. 3d DCA 1981).
Howarth presented a factual situation similar to Bates. In 1987, Howarth had entered pleas of guilty to felony charges. When Howarth later was convicted of another felony, the 1987 convictions were used to qualify him as a habitual offender. After Howarth was sentenced as a habitual offender, he filed a petition for a writ of error coram nobis, contending that his 1987 conviction should be vacated. The trial court treated the petition as a motion for postconviction relief under rule 3.850 and denied the motion as time-barred. The district court affirmed, stating:
We note initially that the trial court's decision to treat Mr. Howarth's petition as a motion for post-conviction relief under rule 3.850 was correct. Rule 3.850 has, to a large extent, supplanted the writ of error coram nobis remedy. Error coram nobis is now available only to defendants challenging the validity of sentences for which they are no longer in custody. See Richardson v. State, 546 So.2d 1037 (Fla.1989). But if a defendant's prior conviction is used to enhance a current sentence, the defendant is considered to be in custody for purposes of post-conviction relief. See Bannister v. State, 606 So.2d 1247 (Fla. 5th DCA 1992). See also Duenas v. State, 636 So.2d 549 (Fla. 2d DCA 1994); McArthur v. State, 597 So.2d 406 (Fla. 1st DCA 1992). Since Mr. Howarth is challenging the validity of his 1987 convictions in an effort to avoid enhancement of his current sentence, he is in custody for purposes of post-conviction review. Thus, his petition was properly considered under rule 3.850.
673 So.2d at 582. This holding is consistent with our decision in Lawson.
The "in custody" requirement under rule 3.850 was not the issue we considered in our Wood decision. Rather, in Wood, we expressly noted what we had held in Richardson v. State, 546 So.2d 1037, 1039 (Fla.1989): "We believe the only currently viable use for the writ of error coram nobis is where the defendant is no longer in custody...." Richardson was consistent with our earlier decision in Lawson and with the district courts' decisions in Weir, McArthur, and Lawrence. At the time of his petition, Richardson was "in custody," serving a life sentence without the possibility of parole. We denied Richardson leave to file a petition for writ of error coram nobis, stating that Richardson's newly discovered evidence claims had to be brought in accord with rule 3.850.
In Richardson, we did recognize that there was a continued limited use for the writ of error coram nobis for prisoners "no longer in custody." The conflict that we considered in Wood was a conflict between the Third District Court of Appeal and the First District Court of Appeal as to whether there was a two-year limitation for the bringing of a petition for writ of error coram nobis which had the limited use we had recognized in Richardson. The First District in Wood v. State, 698 So.2d 293, 294 (Fla. 1st DCA 1997), quashed, 750 So.2d 592 (Fla.1999), held that the same *1218 two-year limitation which applied to a rule 3.850 motion applied to a petition for writ of error coram nobis.[2] The First District certified conflict with Malcolm v. State, 605 So.2d 945 (Fla. 3d DCA 1992), in which the Third District held that a petition for writ of error coram nobis is not subject to the two-year limitation.[3]
In Wood, we accepted that Wood was "no longer in custody" so that Wood, unlike Richardson, could file a petition for writ of error coram nobis. We then held that for such petitions there was not a two-year limitation, as there was for motions filed pursuant to rule 3.850. We further held that this type of remaining petition for writ of error coram nobis, which had been recognized in Richardson, should be brought within the two-year limitation that rule 3.850 required. We amended rule 3.850 to include these petitions and provided a two-year window for defendants who, at the time the Wood decision became final, were "no longer in custody."
However, the window was not available to Bates. Bates was "in custody" beginning in 1994. Bates, at the time Wood became final, could not have filed a Richardson-recognized petition for writ of error coram nobis. Bates' petition, like Richardson's own petition, had to be filed under rule 3.850. Bates' petition is thus untimely for the reasons set forth in Howarth, 673 So.2d at 581.
We quash the district court's decision and direct that the trial court's order denying relief for the reason that the petition was untimely be reinstated.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., concurs specially with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurs specially with an opinion, in which LEWIS, J., concurs.
CANTERO, J., concurs specially with an opinion.
LEWIS, J., concurs in result only.
PARIENTE, C.J., concurring specially.
I agree with the majority that Bates' claim is time-barred. However, I write to address the certified question, which asks whether affirmative misadvice by trial counsel on the sentence-enhancing consequences of a plea is a cognizable ineffective assistance of counsel claim.
Although the trial court and defense counsel are under no obligation to advise the defendant of collateral consequences of a plea, see Major v. State, 814 So.2d 424, 426 (Fla.2002), claims of trial counsel's *1219 misadvice regarding various collateral consequences have been held to be legally cognizable grounds for postconviction relief. These consequences include misadvice about the defendant's eligibility for United States citizenship, see State v. Sallato, 519 So.2d 605, 606 (Fla.1988), the applicability of the Involuntary Commitment of Sexually Violent Predators Act, see Roberti v. State, 782 So.2d 919, 920 (Fla. 2d DCA 2001), and the loss of the right to vote. See Joyner v. State, 795 So.2d 267, 268 (Fla. 1st DCA 2001).
In my view, creating a distinction between misadvice about the future sentence-enhancing consequences of a plea and misadvice about other collateral consequences removes the focus from the pertinent inquiry  whether counsel was "functioning as the `counsel' guaranteed the defendant under the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when he or she affirmatively misadvised the defendant on the sentence-enhancing consequences of a plea. In his concurring opinion in Alexander v. State, 830 So.2d 899, 900 (Fla. 2d DCA 2002), Judge Blue correctly summarized the implications of misadvice on any issue relied on by the defendant in accepting a plea offer:
Without oversimplifying matters, a person charged with a crime is constitutionally entitled to a trial by jury. When entering a plea, the person waives this constitutional right. If the right is waived in reliance on the advice of a court-appointed attorney, and the attorney's advice is legally wrong, the defendant has received ineffective assistance of counsel. It makes no difference whether the misadvice resulted from ignorance or was a knowing misstatement to encourage the defendant to waive the right to trial and enter a plea.
Id. at 900 (Blue, C.J., concurring) (emphasis supplied).
In this case, although Bates' attorney had no duty to advise Bates that a plea might have "sentence enhancing consequences on a sentence imposed for a crime committed in the future," Major, 814 So.2d at 431, once Bates' attorney offered advice on the issue, he had a duty to provide accurate information. Regardless of whether the sentence-enhancing consequences required "independent" action by Bates to come to fruition, the advice given by counsel on this issue was directly relevant to Bates' decision as to whether to enter a plea. Thus, I cannot agree with Justice Cantero's conclusion that counsel's legally incorrect advice does not rise to the level of deficient performance or Justice Wells' conclusion that as a matter of law counsel's misadvice did not cause Bates harm.
With respect to prejudice, Bates alleged in his petition that he would not have entered a plea but for counsel's misadvice. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (stating that with respect to prejudice, a defendant who has entered a guilty or nolo contendere plea must allege "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). The credibility of Bates' assertion as to whether he would have entered a plea had he known of its future sentence-enhancing consequences is a question of fact for the trial court.
Further, I agree with the observations made by Chief Judge Allen in the decision below:
What seems to be at the root of the majority's reasoning is its disapproval of the appellant's thought processes in deciding whether to enter his plea.... The majority creates two classifications of *1220 involuntary pleas, those that are involuntary by virtue of appropriate considerations (and thus entitled to legal remedy) and those that are involuntary by virtue of inappropriate considerations (and thus entitled to no legal relief). Because I do not understand the Sixth Amendment rights to trial by jury and effective assistance of counsel to be limited in this fashion, I cannot join the majority in this departure from settled law.
Bates v. State, 818 So.2d 626, 632 (Fla. 1st DCA 2002) (Allen, C.J., concurring in part and dissenting in part).
Finally, as a matter of public policy, I cannot endorse a rule that appears to condone an attorney giving affirmative misadvice that induces a defendant to enter a plea. As noted by Judge Blue,
the allegation of misadvice is just that and an evidentiary hearing, the only relief which the defendant would immediately receive, may result in a determination that the defendant was not misadvised or that the defendant did not rely on the misadvice in deciding to enter the plea. But an evidentiary hearing is far preferable to saying that affirmative misadvice is acceptable. And it allows an opportunity for vindication of the attorney charged with giving such misadvice, should the allegation be untrue. I also recognize that evidentiary hearings require some judicial effort and time, but I prefer the investment of time to determine the truth rather than a conclusion that the truth does not matter.
Alexander, 830 So.2d at 900 (Blue, C.J., concurring). Accordingly, I would answer the certified question in this case in the affirmative and hold that misadvice by trial counsel on the sentence-enhancing consequences of a plea constitutes ineffective assistance of counsel if the defendant demonstrates that he or she would not have entered the plea but for that misadvice.
ANSTEAD, J., concurs.
WELLS, J., concurring specially.
I concur in the opinion of the majority.
I write to state that even if Bates' petition had been timely, I conclude that Bates would not have been entitled to relief. I reach this conclusion because, assuming counsel's advice was deficient performance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel's alleged misadvice did not cause Bates harm. The cause of prejudice to Bates is the separate and independent new crime for which he was convicted after the plea was entered. Therefore, Bates cannot plead and prove prejudice, which is necessary for Bates to be entitled to relief.
I agree with Justice Cantero that the collateral consequence of future crimes is different from deportation because, in respect to deportation, no new act intervenes to cause the prejudice as occurs with new crimes. I also agree that whether there is a basis for relief for deficient performance of counsel has to be determined on the basis of the case in which counsel performed. I conclude that this is true for the prejudice analysis as well as the deficient performance analysis.
LEWIS, J., concurs.
CANTERO, J., specially concurring.
I concur in the majority opinion concluding that Bates's postconviction claim is untimely and thus time barred under Lawson v. State, 231 So.2d 205, 206 (Fla.1970), and that Wood v. State, 750 So.2d 592 (Fla.1999), does not apply. I write separately, however, to address the question that the First District Court of Appeal certified to us as one of great public importance: whether allegations of affirmative misadvice *1221 by trial counsel on the sentence-enhancing consequences of a defendant's plea for future criminal behavior in an otherwise facially sufficient motion are cognizable as an ineffective assistance of counsel claim. Bates v. State, 818 So.2d 626, 631 (Fla. 1st DCA 2002). This issue continues to arise and begs us to put it to rest.[4]
I would answer the question "no." Even if Bates's claim were timely, I would hold that he has not alleged a cognizable claim of ineffective assistance of counsel. Any wrong advice about a current conviction's potential effect on the conviction or sentence for a future crime is irrelevant to the plea and sentence on which counsel is advising and cannot constitute ineffective assistance of counsel in the case at issue.[5]

The Strickland Standard
Bates pled guilty in 1990 to the charge of possession of cocaine in exchange for a sentence of time served followed by a year's probation. Four years later, he was convicted of an undisclosed felony, and based in part on his 1990 conviction he was sentenced to life imprisonment as a habitual felony offender. In his untimely motion, Bates alleged that his 1990 counsel provided wrong advice concerning the ramifications of his plea, erroneously assuring him that the conviction could never be used against him. Bates claimed that he would not have entered a guilty plea and would have instead insisted on a trial had he received correct advice. Thus, he claimed defense counsel provided ineffective assistance of counsel, rendering his 1990 plea involuntary.
The allegation of ineffective assistance of counsel is analyzed under the two-pronged standard for ineffective assistance announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applied to guilty pleas in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). This standard requires that a defendant must first allege specific acts or omissions of counsel that are outside the broad range of reasonably competent performance under the prevailing professional standards  i.e., errors "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 *1222 U.S. at 687, 104 S.Ct. 2052. A defendant who has entered a plea also must allege "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. 366. When a postconviction claim of ineffective assistance of counsel contains specific facts not conclusively rebutted by the record and meets these requirements, a court must grant an evidentiary hearing. See Mann v. State, 770 So.2d 1158, 1162 (Fla.2000). Because the trial court summarily denied Bates's claim, we must accept the defendant's factual allegations as true to the extent the record does not conclusively rebut them. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000).
Under this standard, Bates's petition adequately alleges prejudice under Hill: he claims he would not have pled guilty but for counsel's wrong advice and would have gone to trial. Moreover, the alleged advice was wrong. At the time of Bates's plea, "any combination of two or more felonies in this state or other qualified offenses" could be used to habitualize a criminal defendant. See § 775.084(1)(a), Fla. Stat. (1989).
The only remaining question, therefore, is whether Bates's allegation that counsel incorrectly advised him about the consequences of future crimes constitutes such deficient performance that "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. I conclude it does not.

Failure to Advise and Incorrect Advice
We have held that counsel's failure to advise a defendant of the collateral consequences of a plea does not constitute ineffective assistance of counsel. In Major v. State, 814 So.2d 424 (Fla.2002), we reaffirmed the duty of counsel to inform a defendant of direct, but not collateral, consequences of a plea. We held that because the law does not require a defendant to be informed of collateral consequences, the failure to inform of such consequences does not affect a plea's voluntariness. Id. at 426-27. We then held that no duty exists to advise a defendant entering a plea that if the defendant commits another crime, the sentence for that crime may be enhanced. Id. at 426.
Although Major resolved the effect of a failure to advise about the sentence-enhancing effects of future crimes, it did not address the consequences of wrong advice. Both this Court and the district courts, however, have addressed whether counsel's wrong advice in other contexts constitutes ineffective assistance of counsel. Florida courts have held that some claims of wrong advice about collateral consequences of a plea do, at least facially, state claims of ineffective assistance of counsel. See, e.g., State v. Leroux, 689 So.2d 235, 236 (Fla.1996) (reversing for evidentiary hearing on defendant's allegation that counsel misinformed him about the amount of time that he would actually serve on his negotiated sentence); State v. Sallato, 519 So.2d 605, 606 (Fla.1988) (where the defendant alleged that counsel incorrectly advised that a guilty plea and conviction could not jeopardize his application for U.S. citizenship, remanding for the trial court to determine "whether the accused was given positive misadvice by trial counsel and the legal ramifications of such advice"); Joyner v. State, 795 So.2d 267, 268 (Fla. 1st DCA 2001) (reversing for evidentiary hearing on defendant's claim that counsel affirmatively misadvised him that his youthful offender adjudication would not count as a prior conviction causing him to lose his right to vote); Roberti v. State, 782 So.2d 919, 920 (Fla. 2d DCA 2001) (reversing for evidentiary hearing on defendant's *1223 allegation that counsel was ineffective for misinforming him regarding applicability of the Involuntary Commitment of Sexually Violent Predators Act); Ray v. State, 480 So.2d 228, 229 (Fla. 2d DCA 1985) (reversing where counsel misadvised that defendant was eligible to receive incentive gain time on a minimum mandatory sentence).
Although we have not considered the certified question, all five district courts of appeal have. Besides the First District in this case, three other courts have held that such misadvice does not constitute ineffective assistance of counsel or render a plea involuntary. See McKowen v. State, 831 So.2d 794, 796 (Fla. 5th DCA 2002); Rhodes v. State, 701 So.2d 388, 389 (Fla. 3d DCA 1997); Stansel v. State, 825 So.2d 1007, 1010 (Fla. 2d DCA 2002). One court has held differently. See Smith v. State, 829 So.2d 940, 941 (Fla. 4th DCA 2002). Many of these courts have analyzed the issue in terms of a plea's voluntariness, without considering either the deficient performance or prejudice prongs of Strickland.

Misadvice About the Collateral Consequences of Future Crimes
As several district courts have recognized, a fundamental difference exists between incorrect advice about collateral consequences of a plea such as deportation and loss of employment and incorrect advice about future crimes. In the former cases, the consequences, while collateral to the conviction, are immediate, result directly from the plea at issue, and occur regardless of the defendant's future conduct. When the consequence is a sentence enhancement for a future crime, however, it is contingent on the commission of another felony, which may never occur. It is the defendant's decision to commit another felony, not the wrong advice, that produces the enhanced sentence.
In this case, counsel's wrong advice about the potential for future sentence enhancement did not affect Bates's 1990 sentence. Cf. Burnham v. State, 702 So.2d 303, 303 (Fla. 1st DCA 1997) (addressing claim of affirmative misadvice regarding actual time to be served). Nor did it have collateral civil effects such as deportation or loss of employment. See, e.g., Sallato, 519 So.2d at 605 (addressing claim of misadvice about whether the plea could result in deportation); State v. Johnson, 615 So.2d 179, 180-81 (Fla. 3d DCA 1993) (addressing claim of erroneous advice that a plea and withholding of adjudication would not jeopardize the defendant's employment as a corrections officer); see also LaMonica v. State, 732 So.2d 1175, 1176 (Fla. 4th DCA 1999) (addressing claim that counsel erroneously stated that statutory sexual offender reporting requirements did not apply). Bates never would have been sentenced as a habitual offender had he not decided to commit another felony. His counsel's advice, wrong though it was, would not have affected him at all. Every person has a duty to follow the law and must suffer the consequences of failing to do so. See Cox v. Louisiana, 379 U.S. 559, 574, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Stansel v. State, 825 So.2d 1007, 1009-10 (Fla. 2d DCA 2002); see also Collier v. State, 796 So.2d 629, 630 (Fla. 3d DCA 2001) (stating that counsel is entitled to assume that the defendant will obey the law in the future). To recognize Bates's allegation as a valid ineffective assistance claim would contradict this fundamental principle. Defense counsel need not anticipate a defendant's future criminal conduct.
Accordingly, I would hold that defense counsel's wrong advice that a defendant's plea cannot be used to enhance the sentence *1224 for a crime not yet committed does not constitute ineffective assistance of counsel.
NOTES
[1] Florida Rule of Criminal Procedure 3.850 was numbered 1.850 in 1970.
[2] At the time that Wood filed his petition for writ of error coram nobis, he was in federal prison, not "in custody under sentence of a court established by the various laws of Florida." Wood's petition attacked an earlier conviction in a Florida court for which he had never been "in custody." See Wood, 750 So.2d at 592-93; Fla. R.Crim. P. 3.850 (1993).
[3] We do note that in Malcolm, the Third District stated:

The law is clear that "the only currently viable use for the writ of error coram nobis is where the defendant [as here] is no longer in custody [on the sentence which he/she collaterally attacks], thereby precluding the use of rule 3.850 as a remedy." Richardson v. State, 546 So.2d 1037, 1039 (Fla.1989).
605 So.2d at 947. The "[on the sentence which he/she collaterally attacks]" language is not in our Richardson opinion. The insertion of those words by the Third District into a quote from Richardson gave to the Richardson decision a meaning which this Court had not given to it. The district court should not have done that. We note that in our Wood decision, we did not approve Malcolm.
[4] For example, several cases are pending in this Court raising the same issue, either because the district court certified the same question as in this case or because it certified a conflict with another district court's opinion. See, e.g., Ey v. State, 870 So.2d 64 (Fla. 2d DCA 2003) (certifying the same question as in Bates); Hanson v. State, 839 So.2d 859 (Fla. 2d DCA 2003) (citing Stansel v. State, 825 So.2d 1007 (Fla. 2d DCA 2002), which certified the same question as in Bates); Jones v. State, 838 So.2d 685 (Fla. 3d DCA 2003) (holding that a defendant is not entitled to postconviction relief for affirmative misadvice regarding the sentence-enhancing consequences of a plea for a new crime committed in the future, and certifying conflict with Smith v. State, 784 So.2d 460 (Fla. 4th DCA 2000)); Clark v. State, 831 So.2d 1282 (Fla. 3d DCA 2002) (certifying conflict with Smith); McNulty v. State, 831 So.2d 221 (Fla. 2d DCA 2002) (certifying the same question as in Bates); Smith v. State, 831 So.2d 221 (Fla. 2d DCA 2002) (certifying the same question as in Bates); Mason v. State, 834 So.2d 224 (Fla. 2d DCA 2002) (certifying the same question as in Bates); Jaworski v. State, 828 So.2d 1046 (Fla. 4th DCA 2002) (certifying conflict with Bates); Wallace v. State, 833 So.2d 796 (Fla. 3d DCA 2002) (certifying conflict with Smith); McPhee v. State, 823 So.2d 160 (Fla. 3d DCA 2002) (certifying conflict with Smith). Many cases raising the same issue remain pending in the several district courts of appeal awaiting our resolution of this case.
[5] I do not address here the situation where at the time of the plea (and the wrong advice attendant to it), the defendant already has committed another felony and counsel's advice is based on the potential consequences of that other felony. In this case, Bates had not yet committed another crime when he entered his plea.