RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0147P (6th Cir.)
File Name: 02a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ABDEL-KARIM A. EL-NOBANI,
*Petitioner-Appellee,*

*v.*

No. 00-3803

UNITED STATES OF AMERICA,
*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-02550—Ann Aldrich, District Judge.

Argued: January 22, 2002

Decided and Filed: April 4, 2002[*]

Before: KENNEDY and DAUGHTREY, Circuit Judges;
BELL, Chief District Judge.[**]

---

[*] This decision was originally issued as an "unpublished decision" filed on April 4, 2002. On April 19, 2002, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**  Thomas J. Gruscinski, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Thomas J. Gruscinski, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant.    Margaret W. Wong, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

   ROBERT HOLMES BELL, Chief District Judge.  In this proceeding, petitioner seeks relief under 28 U.S.C. § 2255. Petitioner argues that his guilty pleas to conspiracy to engage in food stamp trafficking and to harboring an alien were involuntary and unknowing because he was unaware of the deportation consequences of these pleas and because at a meeting with the government, the government misrepresented to petitioner the deportation consequences of his guilty pleas. Respondent argues that petitioner procedurally defaulted his claim, that petitioner's claim has no merit as deportation is collateral to a guilty plea, and that the government did not misrepresent to petitioner the effect of his guilty pleas on his immigration status.  As explained below, we reverse the decision granting petitioner relief, reinstate the convictions and sentences, and reverse the order enjoining the Immigration and Naturalization Service ("INS") from deporting petitioner.

I.

   Petitioner, a Jordanian citizen, is a legal resident of the United States. In December 1996, he was indicted on charges of conspiracy to launder money and to traffic food stamps,

---

petitioner did not raise this claim on direct review. Moreover, he has not satisfied an exception to this procedural bar by showing either innocence or cause and actual prejudice. Ignoring the procedural bar, petitioner's claim fails on the merits. Deportation is a collateral consequence of a plea, and the government did not misrepresent to petitioner the consequences of his pleas.  Consequently, the decisions vacating petitioner's convictions and enjoining the INS are **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.

him about the deportation consequences of his pleas is similarly not persuasive. To support this argument, petitioner relies solely on the factual findings of the district court and does not reference the witnesses' testimony. We review the district court's findings for clear error, and "[a] factual finding is clearly erroneous where, although there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d 1043, 1047 (6th Cir. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In this case, the witnesses' testimony neither supports the district court's findings nor suggests that any misrepresentations were made to petitioner. For instance, petitioner testified that "I don't remember anything about deportation" from the January 31 meeting. Agent Waigand indicated that "[w]hat I specifically recall was that you [(the Assistant United State's Attorney)] provided an explanation that the United States Attorney's Office could not obligate Immigration in any matter before them." Similarly, Agent Owens testified that he told petitioner and petitioner's counsel that INS "would not be very happy should a conviction arise from harboring an illegal alien or from conspiring to engage in some type of marital regime to obtain a green card for an alien who would not otherwise be eligible for it." None of these statements is a misrepresentation. Moreover, petitioner impliedly acknowledges that these statements are not misrepresentations as petitioner's brief characterizes the alleged misrepresentations as a "misunderstanding." Having reviewed the testimony, the district court's factual findings of misrepresentations are not supported by the record. Because the government did not misrepresent to petitioner the consequences of his plea, petitioner cannot show that his plea was involuntary and unknowing.

### III.

To summarize, petitioner's claim that his guilty pleas were not knowing or voluntary is procedurally barred because

food stamp trafficking, alien-harboring, and money laundering. On January 31, 1997, petitioner and his counsel met with the prosecutor, Special Agent Paul Waigand ("Agent Waigand") from the Internal Revenue Service, and Special Agent James Owens ("Agent Owens") from the Department of Agriculture. Following this meeting, petitioner pled guilty to conspiracy to traffic food stamps and alien-harboring on February 10, 1997. In accepting the plea, the district court did not inform petitioner of any possible deportation consequences. At a sentencing hearing on December 14, 1998, the district court sentenced petitioner to two years probation with four months of home confinement and electronic monitoring. Petitioner did not appeal his conviction or his sentence. On March 10, 1999, the INS served petitioner with a notice to appear, which initiated deportation proceedings against petitioner. For the first time, petitioner consulted with an immigration attorney and was advised to attack the validity of his guilty pleas. After this petition was filed, the district court stayed the INS proceedings pending its decision on this petition and scheduled a hearing. At the hearing, petitioner, Agent Waigand, and Agent Owens testified. Based on this testimony, the petition was granted, and the INS was enjoined from deporting petitioner.

### II.

"[T]his [C]ourt 'applies a de novo standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous.'" *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (quoting *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998)). Initially, we must determine whether petitioner is procedurally barred from withdrawing his guilty plea on collateral review. Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 622 (1998). There are two exceptions to this rule. *Id.* Under the first exception, a petitioner's procedural default is excused if

he is actually innocent. *Id.* The second exception requires that a petitioner demonstrate cause and actual prejudice. *Id.*

In this case, petitioner did not appeal his conviction or his sentence and only sought to withdraw his guilty pleas when he filed this petition on October 21, 1999. Thus, petitioner must satisfy one of the two exceptions to the procedural bar. Petitioner does not satisfy the first exception because there is no indication in the record that he is innocent. In fact, the record is void of even a simple affidavit by petitioner asserting his innocence. Instead, petitioner relies on the second exception, which requires a showing of cause and prejudice. Petitioner alleged that he was prejudiced by the automatic nature of his deportation following his guilty pleas.

Here, the record simply does not support a finding of prejudice. In particular, there is no evidence to suggest that petitioner would not have pled guilty if he had been aware of the deportation consequences of his pleas. At the hearing on this petition, petitioner testified that "my main concern at that time [was] me not going to jail . . . . I never thought about immigration and I never put it in an[y] importan[ce]." Additionally, when the government specifically asked petitioner whether he would have pled guilty if he was aware of the deportation consequences, petitioner's counsel objected, and the government's question was not answered. Consequently, petitioner has not demonstrated prejudice to excuse his procedural default.

Even assuming that petitioner's claim is not procedurally defaulted, petitioner may not withdraw his plea because he has not shown that his plea was not voluntary and knowing. *Bousley*, 523 U.S. at 618. Petitioner argues that his lack of awareness of the deportation consequences and the misrepresentations by the government as to his deportation consequences make his pleas involuntary and unknowing. A "defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible

collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

Petitioner contends that deportation is not collateral because under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, the INS has little if any discretion to grant deportation relief for those individuals like petitioner who are convicted of certain crimes. First, although the INS has been restricted in its ability to grant certain discretionary relief in deportation proceedings, "there is no indication that the INS has ceased making this sort of determination on a case-by-case basis." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 n.8 (1999). Second, the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea. A collateral consequence is one that "remains beyond the control and responsibility of the district court in which that conviction was entered." *United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000). While this Court has not specifically addressed whether deportation consequences are a direct or collateral consequence of a plea, it is clear that deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction. *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) ("[W]e hold that potential deportation is a collateral consequence of a guilty plea."); *United States v. Quin*, 836 F.2d 654, 655 (1st Cir. 1987) ("[D]eportation in this context is generally regarded as a collateral consequence."); *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir. 1985) ("[D]eportation is a collateral consequence of a guilty plea."); *United States v. Russell*, 686 F.2d 35, 39 (D.C. Cir. 1982) ("It has become well settled, however, that Rule 11 does not require informing a defendant of the possibility of deportation."). Thus, the fact that petitioner was unaware of the deportation consequences of his pleas does not make his pleas unknowing or involuntary.

Petitioner's alternative argument that at the January 31, 1997 meeting, the government made misrepresentations to