995 So.2d 268 (2008)
Demello BOLWARE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC04-12.
Supreme Court of Florida.
September 18, 2008.
Rehearing Denied November 20, 2008.
*270 Jeffrey P. Whitton, Panama City, FL, for Petitioner.
Bill McCollum, Attorney General, Robert R. Wheeler, Assistant Attorney General, Bureau Chief, and Edward C. Hill, Jr., Special Assistant Attorney General, Criminal Appeals, Tallahassee, FL, for Respondent.
PER CURIAM.
Demello Bolware seeks review of the decision of the First District Court of Appeal in State v. Bolware, ___ So.2d ___, 28 Fla. L. Weekly D2493, 2003 WL 22460271 (Fla. 1st DCA Oct. 31, 2003), on the ground that it expressly and directly conflicts with decisions of other district courts of appeal on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS AND PROCEDURAL HISTORY
On February 13, 2001, Bolware pled no contest to the charge of driving while license suspended or revoked (DWLSR). Following this plea, the trial court sentenced the defendant to pay a fine of $253. On August 24, 2001, the Department of Highway Safety and Motor Vehicles (the Department) determined that following his DWLSR plea, Bolware was a habitual traffic offender and thus revoked his driver's license for five years pursuant to section 322.27(5), Florida Statutes (2001).[1] On November 20, 2001, Bolware filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the county court, arguing: "The conviction under attack was based on a plea that was not made voluntarily with understanding of the nature of the charge and the consequence of the plea, and thus did not meet the requirements of Florida Rule of Criminal Procedure 3.172." The motion further set forth: "The defendant was not advised of the full consequences of his plea. He was never advised by the public defender at the time of, or immediately prior to, entry of the plea that he would be classified as a habitual traffic offender or that his license would be revoked for a period of five (5) years."
The Bay County Court held an evidentiary hearing on December 18, 2001, at which the defendant testified that his trial *271 counsel did not inform him at the time that his license would be revoked or suspended as a result of his plea and that, had he known, he would not have pled no contest. On January 3, 2002, the court denied Bolware's motion, finding that the revocation by the Department was a collateral consequence and that there was thus "no duty imposed upon the court or the defendant's trial attorney to warn him of such collateral consequences."
Bolware appealed to the circuit court. On September 11, 2002, the circuit court reversed the county court's order, holding that a statutorily mandated suspension or revocation of a driver's license is a direct consequence of a plea. The court also held that the failure of defense counsel to advise the defendant of this consequence rendered counsel ineffective.
The State petitioned for a writ of certiorari to the First District Court of Appeal on October 4, 2002. The First District granted certiorari, finding that the circuit court departed from the essential requirements of law in holding that the revocation was a direct consequence of the plea. Bolware, ___ So.2d at ___, 28 Fla. L. Weekly at D2494. The First District determined that the circuit court failed to recognize prior case law of this Court, which held that revocation of a driver's license is not a punishment but rather an administrative remedy. Id. Because this Court had previously held that license revocation was not punishment and that a defendant must only be informed of the "direct consequences" of a plea, which are those that have a "definite, immediate, and largely automatic effect on the range of the defendant's punishment," the court concluded that the trial court and defense counsel were not required to advise Bolware of the possibility of license revocation in order for the plea to be voluntary. Id.
Bolware sought review of the First District's decision in this Court on the basis of its conflict with Daniels v. State, 716 So.2d 827 (Fla. 4th DCA 1998), Whipple v. State, 789 So.2d 1132 (Fla. 4th DCA 2001), disapproved of on other grounds by Stoletz v. State, 875 So.2d 572 (Fla.2004), and Prianti v. State, 819 So.2d 231 (Fla. 4th DCA 2002). In Daniels, the defendant pled nolo contendere to charges of possession of cocaine and marijuana, and the trial court revoked his driver's license pursuant to section 322.055(1), Florida Statutes (1997).[2] 716 So.2d at 828. Daniels moved to withdraw his plea, arguing that because neither the trial court nor defense counsel had advised him that his license could be revoked, his plea was not voluntary under Florida Rule of Criminal Procedure 3.170(k). Daniels, 716 So.2d at 828. The Fourth District held that the defendant was entitled to withdraw his plea because the revocation was definite, immediate, and automatic, and thus was a direct consequence of which the defendant should have been advised for his plea to be voluntary. Id. at 829. The Fourth District has since restated this holding in other cases concerning the suspension and revocation of a driver's license under section 322.28, Florida Statutes. See Nordelus v. State, 889 So.2d 910, 911 (Fla. 4th DCA 2004) (revocation of license following plea to charge of DUI manslaughter is direct consequence because the statute requires the court to revoke the defendant's driver's license upon conviction); Prianti, 819 So.2d at 232 (mandatory two-year revocation of license is direct consequence of plea); Whipple, 789 So.2d at 1138 (lifetime revocation of license is direct consequence *272 of plea); but see Sullens v. State, 889 So.2d 912 (Fla. 5th DCA 2004) (following the First District's decision in Bolware and holding a defendant need not be informed of possibility of license revocation because it is not punishment and therefore not a direct consequence of a plea); State v. Caswell, ___ So.2d ___, 28 Fla. L. Weekly D2492, 2003 WL 22460275 (Fla. 1st DCA Oct.31, 2003) (holding a defendant need not be informed of possibility of license revocation because it is not punishment and therefore not a direct consequence of a plea).
We accepted jurisdiction in this case to resolve the following conflict issue among the district courts: Whether the suspension or revocation of a driver's license is a direct consequence when it results from a guilty or no contest plea, for which the defendant must be informed to ensure that the plea is voluntary.[3] As we discuss in more detail below, we decide this issue in the negative. We begin by addressing the differences between "direct" and "collateral" consequences, as those terms have been defined by this Court and the United States Supreme Court. We then address why license revocation does not constitute "punishment" under our precedent. Finally, we will explain how the consequence in this case, mandatory license revocation, was not "immediate" as that term has been previously defined.

I. DIRECT CONSEQUENCES
We have previously held that the trial court must inform a defendant of the direct, but not the collateral, consequences of a plea. See Major v. State, 814 So.2d 424, 426-27 (Fla.2002); State v. Ginebra, 511 So.2d 960, 961 (Fla.1987). The reason a defendant must be informed of the "direct consequences" of a guilty plea is to ensure that a plea is voluntarily and intelligently made under the Due Process Clause of the Fifth Amendment. See Major, 814 So.2d at 427 (citing Mabry v. Johnson, 467 U.S. 504, 508-09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). As the United States Supreme Court explained in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969):
A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a *273 guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.
Id. at 466, 89 S.Ct. 1166 (footnotes omitted).
The question of what constitutes a direct consequence has therefore been heavily litigated. In Ginebra, we stated that "[t]he trial judge's obligation to ensure that the defendant understands the direct consequences of his plea has been consistently interpreted to encompass only those consequences of the sentence which the trial court can impose." 511 So.2d at 961. Thus, we clearly linked direct consequences to the criminal punishment imposed. In Major, we made this explicit: "The distinction between `direct' and `collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." 814 So.2d at 431 (emphasis added) (quoting Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982)). A year later, we reiterated that a "direct consequence must affect the range of punishment in a definite, immediate, and largely automatic way." State v. Partlow, 840 So.2d 1040, 1043 (Fla.2003) (emphasis added). We have therefore clearly held that, for a penalty to be deemed a direct consequence of a plea, it must constitute punishment. Otherwise, it could not affect the range of punishment.
In several cases, we have held that various consequences of a plea, while undoubtedly serious, are nevertheless collateral to it, and thus a defendant need not be informed about them. See, e.g., Major, 814 So.2d at 431 (holding that the potential for the conviction to be used to enhance the sentence of a future crime was collateral); Ginebra, 511 So.2d at 960 (holding that deportation, which "may, in fact, be a much more severe sanction than the prison sentence actually imposed on a defendant," nevertheless was a collateral consequence); see also State v. Harris, 881 So.2d 1079, 1084-85 & n. 5 (Fla.2004) (acknowledging the Court's previous holding that the involuntary civil commitment of sexually violent predators under the Jimmy Ryce Act is not punishment, but referring for an amendment to Florida Rule of Criminal Procedure 3.172 to require that a defendant be informed of this potential consequence).
In fact, we have held that even the onerous registration requirements of the sexual offender statute are collateral consequences. In Partlow, we explained that the sexual offender registration requirement "is not punishment at all." 840 So.2d at 1043. Yet these requirements impose significant burdens.[4] To many, these requirements *274 and restrictions may be much more onerous than the revocation of a driver's license. But because they do not constitute punishment, we have deemed them a collateral consequence.
Our prior cases demonstrate that neither the seriousness of the sanction nor its burden on the defendant affects the inquiry. If the consequence has "a definite, immediate and largely automatic effect on the range of the defendant's punishment," then it is direct. Major, 814 So.2d at 431 (quoting Major v. State, 790 So.2d 550, 551 (Fla. 3d DCA 2001), approved, 814 So.2d 424 (Fla.2002)). However, if the consequence does not affect the range of punishment, it is collateral to the plea. See id. As we will now discuss, because we have consistently held that driver's license revocation is not punishment, it cannot constitute a direct consequence.

II. LICENSE REVOCATION IS NOT PUNISHMENT
Historically, Florida courts have viewed a license to drive on our state roads as a privilege, not a right. See Thornhill v. Kirkman, 62 So.2d 740, 742 (Fla.1953) ("We think there is ample warrant for the legislature to treat a driver's license as privilege, subject to suspension or revocation for cause."); Smith v. City of Gainesville, 93 So.2d 105, 106 (Fla.1957) ("In [Thornhill], we aligned ourselves with those authorities which hold that a driver's license is a privilege, subject to proper regulations."); City of Miami v. Aronovitz, 114 So.2d 784, 787 (Fla.1959) ("The owner of such a license exercises the privilege granted by it subject to reasonable regulations in the use of the highways common to all citizens.").
Over fifty years ago, we considered whether license revocation constitutes punishment. See Smith, 93 So.2d at 105. We held it did not. After noting that a "driver's license is a privilege" and is subject to regulations to protect the public, we explained:
It is this aspect of protecting the public, rather than as punishment for the offender, that courts have unanimously recognized as justification for revoking drivers' licenses upon conviction of certain offenses. True the recalcitrant law violator might feel the pain of the loss of a valuable privilege. However, the imposition of pain is not the objective of this law. On the contrary, its primary purpose is to relieve the public generally of the sometimes death-dealing pain recklessly produced by one who so lightly regards his licensed privilege.
Id. at 106-07 (emphasis added); see also Aronovitz, 114 So.2d at 787 ("We have expressly decided that the requirement of obtaining a driver's license and the exercise of the privilege of driving over the public highways, together with the correlative loss of the privilege under certain conditions, is a reasonable regulation of an individual right in the interest of the public good."); cf. United States v. Lovett, 328 U.S. 303, 324, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring) ("Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation."). We have never receded from, or even questioned, that conclusion. Smith has been consistently cited by the district courts of appeal. Dep't of Highway Safety & Motor Vehicles v. Brandenburg, 891 So.2d 1071, 1075 (Fla. 5th DCA 2004); State Dep't of Highway Safety & Motor *275 Vehicles v. Gordon, 860 So.2d 469, 471 (Fla. 1st DCA 2003); State v. Scibana, 726 So.2d 793, 794 (Fla. 4th DCA 1999); McDaniel v. State, 683 So.2d 597, 598 (Fla. 2d DCA 1996); Gomez v. State, 621 So.2d 578, 579 (Fla. 3d DCA 1993). Therefore, the notion that the revocation of a driver's license is not punishment is fairly settled law.
No one contests that the loss of the driving privilege constitutes a personal hardship. We recognized as much in Smith. See 93 So.2d at 107 ("True the recalcitrant law violator might feel the pain of the loss of a valuable privilege."); see also Aronovitz, 114 So.2d at 787 ("It is a privilege to hold a license to drive. It is a severe handicap to be compelled to do without one."). However, as just discussed, the fact that it may constitute a hardship does not make it punishment. Otherwise, as with deportation and the other examples cited above, many consequences that have been deemed collateral would instead be direct. Accordingly, we reaffirm our statements in previous cases and conclude that license revocation, although a personal hardship, does not constitute punishment and therefore cannot be a direct consequence of a plea.

III. THE CONSEQUENCE IN THIS CASE WAS NOT IMMEDIATE
Because we have concluded that mandatory license revocation is not punishment and therefore not a direct consequence, it was not necessary for the trial court to inform Bolware about it before entry of the plea. However, there are two additional bases upon which to conclude that the revocation of Bolware's license was not a direct consequence.
First, our definition of a direct consequence requires not only that it "must affect the range of punishment," but that it do so "in a definite, immediate, and largely automatic way." Partlow, 840 So.2d at 1043 (emphasis added). Bolware pled no contest and was convicted of driving with a suspended or revoked license. However, the trial court did not revoke his license at that time. It was not until six months later that the Department of Highway Safety and Motor Vehicles noticed it was Bolware's third conviction for the same offense (DWLSR) and decided that he was a habitual traffic offender. See § 322.264, Fla. Stat. (2000). Thus, under the statute at issue in this case, the consequence (license revocation) was not immediate.
Second, in Ginebra, we limited the trial judge's obligation to inform defendants of "only those consequences of the sentence which the trial court can impose." 511 So.2d at 961 (emphasis added). In contrast to the statutes at issue in Daniels and other cases, in which the court revoked the driver's licenses of certain drug offenders, see, e.g., § 322.055, Fla. Stat. (2007), or of defendants convicted of DUI manslaughter, see, e.g., § 322.28(2)(e), Fla. Stat. (2007), section 322.27(5) leaves it to the Department to revoke the license of a habitual traffic offender. ("The department shall revoke the license of any person designated a habitual offender...."). The trial court could not have imposed the license revocation in this case, and therefore, under our decision in Ginebra, it is not a direct consequence about which the court must inform a defendant.

IV. CONCLUSION
A voluntary plea requires that the defendant be told only of consequences that affect the range of criminal punishment and those other subjects specifically listed in rule 3.172(c). Our cases are clear that the loss of the privilege to drive is not punishment. Certainly the loss of one's driver's license can be extremely burden-some *276 and, in this case, it was clearly the most serious consequence of Bolware's plea. Therefore, although it is not direct, we nevertheless conclude that the revocation of a license is such a serious consequence that a defendant should be informed of it. Accordingly, we direct that the rule be amended as we have done with other consequences that we found to be collateral but of substantial importance. See, e.g., Fla. R.Crim. P. 3.172(c)(9) (requiring defendant convicted of a sexual offense be informed of the potential for involuntary civil commitment); Fla. R.Crim. P. 3.172(c)(8) (requiring defendant be told of the potential for deportation).[5]
In so doing, we agree with Justice Cantero's concurring opinion in Partlow, wherein he acknowledged:
A defendant's constitutional right to a jury trial is sacrosanct. See art. I, § 22, Fla. Const. ("The right of trial by jury shall be secure to all and remain inviolate."); State v. Griffith, 561 So.2d 528, 530 (Fla.1990) (stating that right of trial by jury is "indisputably one of the most basic rights guaranteed by our constitution"); Fischer v. State, 429 So.2d 1309, 1311 (Fla. 1st DCA) ("The right to trial by jury is, of course, one of the most sacred and fundamental rights of our legal system."), review denied, 438 So.2d 834 (Fla.1983). The rules should require that before a defendant waives that important right, the defendant be informed of all important consequences, whether direct or collateral.
840 So.2d at 1045 (Cantero, J., concurring).
This prospective rule amendment, however, will not provide relief to Bolware. Nevertheless, we urge that trial courts continue to follow their practice of informing defendants of this serious consequence because Daniels has been the law in the Fourth District for over a decade. We also hope that counsel include this important consequence when advising defendants about whether or not to plead guilty or nolo contendere.
Given our conclusion that the revocation of a driver's license is a collateral consequence to a plea of no contest to the charge of DWLSR, we approve the First District's decision in Bolware and hold that neither defense counsel nor the trial court was required to advise Bolware that his license could be revoked. We approve the Fifth District's decision in Sullens and the First District's decision in Caswell, and disapprove the decisions of the Fourth District in Daniels, Whipple, Prianti and Nordelus, to the extent that they conflict with the instant decision.
It is so ordered.
WELLS, PARIENTE, BELL, JJ., and CANTERO, Senior Justice, concur.
PARIENTE, J., specially concurs with an opinion, in which CANTERO, Senior Justice, concurs.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
LEWIS, J., concurs in result only.
QUINCE, C.J., dissents with an opinion.
*277 PARIENTE, J., specially concurring.
A defendant pleads no contest to the charge of driving with a suspended license, apparently his third such offense within five years. He understands that he will have to pay a fine of $253. However, neither the trial judge nor his lawyer advises him that his plea will result in an automatic five-year revocation of his driver's license. I believe that this scenario should be the type of serious consequence about which a trial judge is required to advise the defendant to ensure that a plea is voluntary. Nevertheless, I agree that our precedent, beginning with Ginebra and continuing with Major and Partlow, mandate the conclusion that license revocation is not punishment and therefore not a direct consequence of the plea.[6]
I dissented in Partlow because I believed we were applying too rigid a definition of "direct consequences," which limited the trial court's responsibility during the plea colloquy to informing the defendant of only those consequences that increase the range of punishment. As I explained:
In distinguishing direct from collateral consequences, I do not interpret Major as requiring that a direct consequence of a plea entail an automatic criminal penalty. In Major, 814 So.2d at 429-31, we adopted the less restrictive definition of what constitutes a direct consequence of a plea from the Fourth District's opinion in Daniels v. State, 716 So.2d 827 (Fla. 4th DCA 1998). In Daniels, the Fourth District, utilizing the definition of a direct consequence of the plea we later adopted in Major, held that a defendant was entitled to withdraw a nolo contendere plea entered without the defendant first being informed of the license revocation. The Fourth District concluded that the revocation was definite, immediate, and automatic upon conviction, that it was a consequence of the plea, and that it was a "penalty" as contemplated by Florida Rule of Criminal Procedure 3.172(c)(1). See Daniels, 716 So.2d at 828-29.
Partlow, 840 So.2d at 1046 (Pariente, J., dissenting). However, the Court adopted the more narrow view that "direct consequences" only relate to those consequences that affect the range of punishment.
The bottom line is that the direct versus collateral consequence dichotomy is just not working and every defendant should be informed of all important consequences before entering a guilty plea. In this case, that is why I can join with the majority because even though the majority, in keeping with our precedent, does not find the loss of a driver's license to be a direct consequence, it has recognized that "the revocation of a license is such a serious consequence that a defendant should be informed of it." Majority op. at 276. The majority has also directed that because of the significance of this consequence, rule 3.172(c) of the Florida Rules of Criminal Procedure should be amended so that defendants are in fact advised of this consequence. Moreover, we have urged trial courts to follow the practice of informing defendants of this serious consequence in the plea colloquy as well as urging counsel, who should have an independent obligation to ensure defendants are aware of all serious *278 consequences, to also advise their clients.
I know that every time this Court mandates one more sentence be included in a plea colloquy, the reaction among many trial judges is that we are out of touch with reality and just do not understand how long and involved the plea colloquies have become. While I appreciate this concern, we must collectively remember that we are accepting a defendant's guilty plea and it is our obligation to ensure that it is indeed voluntary. We must never forget, as eloquently stated by Justice Cantero in Partlow, that a "defendant's constitutional right to a jury trial is sacrosanct." Partlow, 840 So.2d at 1045 (Cantero, J. concurring).
I believe that our law has diverged from what this Court initially contemplated when this Court memorialized the requirements governing the acceptance of pleas in Florida Rule of Criminal Procedure 3.172. This rule was adopted in 1977 and provided in relevant part:
(c) Except where a defendant is not present for a plea, ... the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he understands the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

Fla. R.Crim. P. 3.172(c)(1)(1977) (emphasis added). In Partlow, Justice Cantero referred to sexual offender registration and observed: "The rules should require that before a defendant waives that important right, the defendant be informed of all important consequences, whether direct or collateral." 840 So.2d at 1045 (Cantero, J., concurring). I agree.
I have come to the conclusion that a comprehensive review of the plea colloquy and the rules governing plea colloquies by the Criminal Procedure Rules Committee, after receiving input from the trial judges, would be an important step to ensuring that the plea colloquy contains all of the serious consequences that could result in entering a plea of guilty or nolo contendere. This is certainly the case for those consequences that would constitute penalties that follow directly and automatically from the conviction. I also believe that a clearly stated list of important consequences that can flow from the guilty plea, signed by the defendant, would also facilitate the plea colloquy. I therefore urge the committee to initiate this process expeditiously so that the Court can consider any recommended revisions.
CANTERO, Senior Justice, concurs.
ANSTEAD, J., concurring in part and dissenting in part.
Today, the majority has taken a giant step backwards in our efforts to assure that pleas in criminal cases are made with a defendant's full knowledge of the consequences of a plea. In the process, the majority has diminished not only the role of the sentencing court, but the critical role and responsibility of the one person a defendant has been able to depend on to navigate the twists and turns of our adversary legal system, his lawyer.
Perhaps I could agree with the majority's holding denying relief to the petitioner under the narrow circumstances of this case if the only issue before us was the obligation of the trial court during a plea colloquy. However, I cannot join the majority's strained analysis as applied in other contexts, and in particular as applied to the several decisions from the Fourth District now disapproved by the majority. In *279 fact, as the dissenting First District judge in Bolware points out, this Court and all of the district courts have previously cited these same decisions with approval. Bolware, ___ So.2d at ___, 28 Fla. L. Weekly at D2494 (Allen, J., dissenting).[7] Neither can I agree with the majority's implicit holding that a lawyer's duty to a client to inform the client of the potential consequences of a decision to plea is no greater than the trial court's limited duty to discuss the consequences during a plea colloquy.

Bolware
To begin, we must be careful to distinguish between the two dissimilar issues the majority appears to discuss: first, the duty of the trial court during a plea colloquy, and second, the duty of a lawyer to her or his client to explain the consequences of a plea. On the first issue, I agree with the majority's analysis explaining that in order for the trial court to be responsible for notifying a defendant of a potential consequence of a plea and conviction the consequence must be immediate and direct, and in Bolware's case the consequence was not immediate or direct since any revocation under section 322.27(5) is to be determined by the Department of Highway Safety and Motor Vehicles, and not by the sentencing court. I also agree with the majority that, in contrast with the cases from the Fourth District where the Legislature explicitly mandated the sentencing court to impose the suspensions, the trial court played no role in this case in ordering the revocation.
These circumstances distinguish Bolware's case from those from the Fourth District and make it unnecessary to decide the broader issues addressed by the majority. In fact, the acknowledgment of these distinguishing circumstances and their legal effect demonstrate that there is no conflict between the First District's decision in Bolware and the Fourth District's decisions on the narrow issue of a trial court's duty to inform a defendant of the consequences of a decision to plead guilty or nolo contendere. On the other hand, if we are going to make law beyond the circumstances presented here we should recognize the valid distinction between cases like Bolware's, where the license revocation was an indirect and collateral consequence, and those cases where the license revocations were a direct and immediate consequence of the plea.

Mandatory and Direct Judicial Suspensions
The lack of direct judicial involvement in the license suspension in Bolware's case is to be contrasted with the circumstances faced by the Fourth District in the cases discussed and disapproved by the majority. In all of these cases the Fourth District concluded that because the license revocations imposed by the sentencing court were a direct and immediate consequence of the defendant's plea and conviction in his criminal case, the defendant was entitled to be informed either by counsel or the trial court of the mandatory revocation. For example, in Daniels, the controlling statute mandated that the sentencing court suspend the defendant's driving privileges immediately upon the defendant's conviction of a drug offense. 716 So.2d at 828-29. And, in Whipple v. State, 789 So.2d 1132 (Fla. 4th DCA 2001), abrogated on other grounds by Stoletz v. State, 875 So.2d 572 (Fla.2004), the sentencing court, acting on a statutory mandate, permanently *280 revoked defendant's driving privileges upon his criminal conviction even though the revocation was not discussed in the plea colloquy and the revocation came as a complete surprise to the defendant. Id. at 1134-35. This same sort of fact pattern has been presented to the Fourth District in other cases. See Nordelus v. State, 889 So.2d 910, 911 (Fla. 4th DCA 2004); Prianti v. State, 819 So.2d 231, 232 (Fla. 4th DCA 2002). In Major, we cited both Daniels and Whipple with approval in holding that defendants must be apprised only of the direct consequences of a plea and not the collateral, indirect consequences. 814 So.2d at 429, 431 n. 5. In fact, we quoted from the Daniels opinion at great length to support our holding on the direct versus collateral issue. Major, 814 So.2d at 429.
In his appellate filings the petitioner has called our attention to numerous other instances where the Legislature has mandated that driver's license revocation be directly imposed by the sentencing courts as an additional sanction in a wide variety of criminal or juvenile settings:
It seems the legislature agrees, and has associated loss of privileges with numerous non-traffic related offenses, frequently unashamedly calling it punishment. See for example ... Fla. Stat. § 790.22(5)(a) (expressly makes suspension of driving privileges a part of the penalty for a minor being in a possession of a firearm); Fla. Stat. § 948.01(3)(a) (specifically allows the Court to revoke or suspend a driver's license as part of a "community based sanction" during the course of community control plans); Fla. Stat. § 984.09(4)(d) (expressly defining the suspension of a child's driving privileges as an appropriate punishment for contempt of court, as does Fla. Stat. § 985.216(4)(d)). Generally in delinquency cases the Court may revoke or suspend the child's drivers license, Fla. Stat. § 985.231(a)(4). Finally, Fla. Stat. § 322.055 expressly requires the Court to direct the department to revoke driving privileges of any person 18 years of age or older convicted of possession or sale or conspiracy to possess, sell or traffic in any controlled substance. No nexus to driving is required for the operation of any of these statutes.
Reply Brief of Petitioner at 3-4. The enactment of these statutes make it apparent that the Legislature has chosen to mandate that sentencing courts directly impose the additional sanction of driver's license revocation in a significant number of criminal and juvenile prosecutions, even where the charged offense is unrelated to highway safety. The decision to make license revocation an additional direct sanction in a drug possession case, for example, is obviously an attempt to add an effective additional penalty against a criminal defendant, and is distinguishable from the collateral administrative scheme invoked in Bolware's case by the Department of Highway Safety and Motor Vehicles.

License Revocation as Punitive Sanction
In essence, our prior case law has established that a defendant should be advised of the potential "direct and immediate" consequences of a plea and conviction, but need not be advised of the "collateral" or indirect consequences. That appears to be a sound and fair rule and that is the rule the Fourth District applied in the decisions we now disapprove. However, today's majority has essentially applied a rule of "unintended" consequences in seizing upon the particular phrasing of the rule in past cases.
For example, in Major, we wrote:
We expressly approve the statement set forth in the Third District's opinion in this case:

*281 [A] judge is required to inform a defendant only of the direct consequences of his [or her] plea and is under no duty to apprise him [or her] of any collateral consequences. A direct consequence is one that has a "definite, immediate, and largely automatic effect on the range of the defendant's punishment."

Major, 790 So.2d at 551 (quoting Fox, 659 So.2d at 1327). We approve the less restrictive definition of direct consequence used by Florida's district courts as stated in Zambuto v. State, 413 So.2d 461, 462 (Fla. 4th DCA 1982) (quoting Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.1973)):
The distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.
Major, 814 So.2d at 431 (footnote omitted). Where the majority and I part ways is in the majority's unsupported and unjustified seizure upon the word "punishment" in this statement of the rule as having a talismanic effect that overrides the "direct and immediate" emphasis of the rule and turns the purpose of the rule on its head, i.e., to inform liberally a defendant of the possible sanctions he faces as a consequence of his plea and conviction. This overreliance on the word "punishment" is flawed in at least two respects: first, in the origins of the rule there is no indication that it was used as a word of limitation or that some other word like "sanctions" would not have conveyed the same meaning; second, the majority gives the word a hypertechnical and strained meaning that is inconsistent with both the punitive purpose of the Legislature in mandating revocation as an additional sanction for criminal offenses and with our liberal purpose in enacting the plea colloquy rule.
It is one thing to finely parse a concept like "penalty," "punishment," or "sanction" in the abstract, but quite another to actually draw meaningful lines in real-life situations. Obviously, possession of a valid driver's license is absolutely essential to function in today's society. Try telling a truck driver who has just had his license permanently suspended that he has not been punished; or for that matter, telling a teenager who has been "grounded" that she is not being punished.[8] By focusing on a narrow, artificial, and hypertechnical concept of "punishment," the majority is undermining a process that is intended to be fair and reasonable in being certain that a person is fairly informed of the possible legal consequences of a decision to plead. Adding license revocation, in some instances permanent revocation, as an additional punishment for a drug offense was obviously intended by the Legislature to be punitive. Recognizing how valuable a license to drive is regarded, the Legislature decided this additional sanction would get a drug offender's attention in a most effective way. In effect, the majority is simply ignoring this additional sanction as if it did not exist.
The same misconception can be said of the majority's analysis of the word "collateral." Collateral, in fact, is used in the judicial system to distinguish direct from indirecta direct consequence can hardly be a collateral consequence. In the context of the issue before us, it is apparent that the Legislature itself has expressly made license revocation a direct rather *282 than collateral sanction of certain criminal convictions, while still retaining it as a collateral sanction in other instances, such as Bolware's case. We should recognize this distinction.
Other states have had no difficulty in distinguishing between those collateral statutory schemes, such as assessing points against licensed drivers each time the driver is convicted of a traffic infraction, as compared to statutory schemes that directly mandate suspensions immediately upon a criminal conviction. For example, in Barkley v. State, 724 A.2d 558 (Del.1999), the Delaware Supreme Court held that a statutory mandate for immediate revocation of driving privileges upon a drug conviction is a direct consequence of a criminal plea, unlike the revocation for traffic offenses accomplished through separate collateral administrative proceedings:
In our view, the revocation accomplished by the sentencing judge under 21 Del.C. § 4177K is a penalty and, not only a direct consequence of the sentencing, but a necessary and integral part of the sentencing process. Unlike the deportation proceeding implicated in State v. Christie[, 655 A.2d 836 (Del.Super.1994)], Barkley's loss of driving privileges at the time of sentencing was an immediate, automatic and mandatory penalty.
....
The State argues that since the State's granting of a license to operate a motor vehicle is a privilege, not a right, the denial of that privilege may not give rise to a claim of lack of due process. The State's position that a driver's license is a privilege is generally correct and its argument relating to the consequences of that status as a privilege may be valid in the context of administrative proceedings leading to license revocation. But, it misses the mark in this case where, for purposes of Rule 11(c) in light of the statutory language, the revocation occurs as an automatic and mandatory penal consequence of the sentencing process. Because the revocation is part of the "mandatory minimum penalty" under Rule 11(c), as we now hold, the failure to secure the defendant's understanding of that consequence, constitutes a violation of the Rule.
Id. at 560-61(emphasis supplied). Just as the State's argument in Barkley was deemed to miss the mark, so does the majority's flawed analysis here.
Similarly, in Hall v. Gainsheimer, 137 F.App'x 866, 2005 U.S.App. Lexis 12823 (6th Cir. June 24, 2005), the Sixth Circuit, in reviewing an Ohio conviction, explained:
As a judge-imposed punishment made part of Hall's sentence, the suspension of Hall's driver's license constituted a direct consequence of Hall's guilty plea. It was not a collateral consequence to be imposed, if at all, by an agency or party external to the court. See El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir.) (explaining that "[a] collateral consequence is one that `remains beyond the control and responsibility of the district court in which that conviction was entered'") (quoting United States v. Gonzalez, 202 F.3d 20, 27 (1st Cir.2000)), cert. denied, 537 U.S. 1024, 123 S.Ct. 535, 154 L.Ed.2d 435 (2002); cf. Kratt v. Garvey, 342 F.3d 475 (6th Cir.2003) (holding that revocation of a defendant's pilot's license was a collateral consequence of the defendant's guilty plea to drug charges where the revocation was effected by the Federal Aviation Administration more than a year and a half after the defendant pleaded guilty before the court). Because the suspension of Hall's driver's license was to be a *283 direct consequence of his plea, effected by the trial court as required by Ohio law, the trial court was required to advise Hall that his plea would result in such suspension.

Id. at 869 (emphasis supplied); see also Corley v. Dep't of Motor Vehicles, 222 Cal. App.3d 72, 271 Cal.Rptr. 406, 408 (1990) (revocation of license by trial court mandated by statute and therefore is direct consequence). These decisions recognize the obvious distinction between Bolware's case, where the suspension was indirect and collateral, and the direct consequence cases decided by the Fourth District.
In contrast to these decisions on point, the majority relies upon decisions that can readily be distinguished. See, e.g., Smith v. City of Gainesville, 93 So.2d 105, 107 (Fla.1957) (upholding constitutionality of statute authorizing municipal courts to revoke drivers' licenses under designated circumstances). Just as Bolware's case involves no challenge to the constitutionality of the statutory mandate for license revocation, Smith had absolutely nothing to do with the rights of a defendant to be informed of the potential consequences of a decision to plead in a criminal case. The fact that license suspensions may, in some instances, be invoked for public safety is essentially a non sequitur. Surely all of our criminal laws are enacted for public safety. The authors of Smith would no doubt be shocked to learn that we would be using the decision as a limitation on what defendants must be told about the consequences of a decision to plead in a criminal case. The other significant decision relied upon by the majority, Major, is the very one in which we quoted with approval from the Fourth District's opinion in Daniels, the same decision we abandon today. In Major, we held that a trial court need not advise a defendant that a plea in a pending case may have sentence-enhancing consequences upon a conviction for a crime that might be committed in the future. Such a holding is readily distinguishable from the issue we face today. Criminal registration requirements are similarly distinguishable as nonpunitive collateral consequences of a conviction that simply reflect an offender's status. Florida and other states have long had laws requiring certain convicted felons to register with the law enforcement agency near the felon's residence. Sexual offender registration has been added to that list. See State v. Partlow, 840 So.2d 1040, 1043 (Fla.2003). The other decisions cited by the majority are similarly distinguishable.
Under the majority's "gotcha" holding, we can only imagine a defendant's startled reaction when, upon deciding to plea to the charges, she is told about all of the possible consequences of her plea except for the permanent revocation of driving privileges that the trial court then "surprises" the defendant with after accepting the plea. This is precisely the situation addressed and condemned by the Fourth District in Whipple that we approve today. Surely, it strikes at the core of fairness and due process to hold that a defendant need not be told of such a serious sanction the sentencing court is statutorily mandated to "directly and immediately" impose upon conviction. In my view it defies common sense and is pure sophistry to suggest that the "direct and immediate" imposition of a permanent license revocation by a sentencing court is not a sufficient sanction to require notice to the defendant. The majority's holding will, of course, mean that defendants will be less informed as to the serious consequences of a plea, thereby undermining the essential purpose of the plea colloquy and ultimately the voluntary character of the plea. The integrity and reliability of the entire plea process is undermined by such "hide the ball" tactics.

*284 Competent Counsel

Finally, the majority goes far astray in implicitly treating the responsibilities of a defendant's lawyer as limited to the obligations of a trial judge during a plea colloquy.[9] Hopefully, all would agree that the unique obligations of a lawyer to a client are far broader than the limited obligations of the trial court to a criminal defendant contemplating a plea. When a client hires a lawyer he has every right to expect that his lawyer will be knowledgeable of the law and especially with regard to all possible legal consequences of the client's plea or conviction in a criminal case, including any statutory provision for the suspension of driving privileges upon entry of the plea. It is, after all, that knowledge of the lawyer and its communication to the client that provides the fundamental basis for all future decision-making by the client, including the possible decision to plead. Common sense tells us that it is one thing to enter a plea, for example, knowing that you may face a monetary fine, but it is quite another choice if you face not only a fine but a mandatory five-year driver's license suspension. One hardly needs to think twice in deciding which is the more serious sanction. A client should be able to look to his or her lawyer for advice of these possible legal sanctions.
Of course, the facts of a case may leave a client with little choice, and those facts may be part of the relevant circumstances a trial court considers when a claim of ineffectiveness of counsel is asserted under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Having limited choices, however, in no way diminishes a lawyer's obligation to advise her or his client of the possible consequences of a plea or conviction. Hence, I strongly disagree with the majority's failure to adequately address this issue, and especially its implicit conclusion that a lawyer has no greater duty than that of a trial court.
QUINCE, C.J., dissenting.
I cannot agree with the majority's determination that the revocation of one's driver's license is not a direct consequence of a finding of guilt whether by plea or otherwise. I recognize that the case law from this Court indicates that a direct consequence is one that affects the range of punishment and is definite, immediate, and largely automatic. See State v. Partlow, 840 So.2d 1040, 1043 (Fla.2003); Major v. State, 814 So.2d 424, 431 (Fla.2002). However, I believe that our definition of punishment is too narrow. As defined in Black's Law Dictionary, punishment is "A sanctionsuch as a fine, penalty, confinement, or loss of property, right, or privilegeassessed against a person who has violated the law." Black's Law Dictionary 1269 (8th ed.2004). Thus, punishment is not limited to the length of a confinement or sentence but can be some other form of sanction.
While the revocation of one's driver's license does not affect the criminal sentence, I believe that is in fact a punishment. Since punishment is a sanction that *285 can involve the loss of a privilege, and a driver's license is a privilege, the loss of a license, especially the permanent revocation of a driver's license,[10] is a punishment. In today's society, it is difficult, if not impossible in some locales, to travel from place to place without a driver's license. In many areas there is inadequate or no public transportation. We have come to rely more and more on the use of personal motor vehicles to get to work, to shop, to attend recreational activities, and to attend many other activities that are a part of daily life. It is sometimes virtually impossible to perform the ordinary functions of life without ready access to a motor vehicle. Thus, having a driver's license is often not just a desire but a necessity.
It also seems to me that the punishment of license revocation is also largely automatic. Section 322.27(5) provides, in pertinent part, that "The [Department of Highway Safety and Motor Vehicles] shall revoke the license of any person designated a habitual offender." § 322.27(5), Fla. Stat. (2007)(emphasis added). Thus, once the offender has been designated as a habitual traffic offender,[11] the department must revoke his or her license.
For these reasons, I would find that a defendant must be informed of the revocation of his or her driver license before entering a plea to a criminal offense because revocation is a direct consequence of the plea.
NOTES
[1] This section provides:

The department shall revoke the license of any person designated a habitual offender, as set forth in s. 322.264, and such person shall not be eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in s. 322.271. Any person whose license is revoked may, by petition to the department, show cause why his or her license should not be revoked.
§ 322.27(5), Fla. Stat.
[2] This statute provides that upon conviction for possession or sale of a controlled substance, the trial court shall direct the Department to revoke the defendant's driver's license. See § 322.055(1), Fla. Stat.
[3] We recognize that Bolware's postconviction motion was based upon his counsel's alleged ineffectiveness in failing to inform him that mandatory license revocation was a possible consequence of his no contest plea and that such claims should be analyzed under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, in State v. Ginebra, 511 So.2d 960, 960 & n. 1 (Fla.1987), we stated that "[a]n ineffective assistance of counsel claim is relevant solely to the extent that it bears on the issues of voluntariness and understanding of the consequences of pleading guilty" and held that "for counsel to provide the reasonably effective assistance mandated by the Constitution, he need advise his client of only the direct consequences of a guilty plea." Accord Major v. State, 814 So.2d 424, 431 (Fla.2002). Therefore, our "voluntariness" analysis as to whether license revocation is a direct consequence about which a defendant should be informed and our ultimate resolution of the conflict issue in this case are determinative of whether Bolware's counsel was deficient in failing to inform him of this consequence.
[4] A person so designated must comply with lifelong obligations, including registering at least every six months with the county sheriff to provide specified information and re-registering within 48 hours of establishing or changing a temporary or permanent residence. See § 943.0435(2), Fla. Stat. (2007). With each change of temporary or permanent residence, a registrant also must report to the Department of Highway Safety and Motor Vehicles to obtain a state driver's license or identification card reflecting the address and the sexual offender designation. Id. Failure to comply with these requirements is a felony. See, e.g., id. § 943.0435(4)(c), (9)(a), (14)(c)(4). Specific information about the sexual offender may be released to the public in the "governmental interests of public safety." Id. § 943.0435(12); see also id. §§ 943.043, 944.606(2). The statute also prohibits sexual predators from working or volunteering in schools, playgrounds, or other places where "children regularly congregate." State v. Robinson, 873 So.2d 1205, 1211-14 (Fla. 2004) (describing the registration requirements and other restrictions on "sexual pre-dators" and acknowledging the attendant effects of such a designation).
[5] We direct that the Criminal Procedure Rules Committee of The Florida Bar formulate language for amendment of rule 3.172(c) for use during the plea colloquy. That colloquy should specify that if the defendant pleads guilty or nolo contendere and the offense to which the defendant is pleading is one for which automatic, mandatory driver's license suspension or revocation is required, regardless of whether the suspension or revocation is by the court or by a separate agency, the trial court should inform the defendant that the plea may result in automatic, mandatory suspension or revocation as part of its plea colloquy.
[6] Because mandatory license revocation is such a serious consequence to a defendant, I also believe that defense counsel should be obligated to inform the defendant of it in order to meet the constitutional requirement of effective assistance of counsel. However, I also agree that our decisions in Ginebra, Major, and Partlow foreclose the possibility of an ineffective assistance claim based on a failure to inform a defendant of mandatory license revocation as a consequence of a plea.
[7] See Major v. State, 814 So.2d 424, 429 (Fla. 2002); Moore v. State, 831 So.2d 1237, 1238 (Fla. 1st DCA 2002); Watrous v. State, 793 So.2d 6, 9 (Fla. 2d DCA 2001); Howard v. State, 762 So.2d 995, 996 (Fla. 3d DCA 2000); Daniels v. State, 716 So.2d 827 (Fla. 4th DCA 1998); Boutwell v. State, 776 So.2d 1014, 1016 n. 2 (Fla. 5th DCA 2001).
[8] The majority does not tell us what this additional sanction is to be called, if not punishment. In other words, if it is not additional punishment then what is it?
[9] This is the issue the First District apparently addressed in Bolware:

The circuit court essentially ruled that suspension or revocation of a driver's license, a statutorily mandated administrative act, is a direct consequence of a plea to a specified driving offense, requiring defense counsel to warn the defendant prior to the entry of the plea. We find certiorari review is appropriate under the circumstances.
Bolware, ___ So.2d at ___, 28 Fla. L. Weekly at D2493 (emphasis supplied). Despite the First District's characterization of the issue as one of effectiveness of defense counsel the majority relegates its discussion of this issue to a footnote.
[10] Bolware's license was revoked for a period of five years.
[11] Being designated a habitual traffic offender requires the defendant to meet the criteria specified in section 322.264, Florida Statutes (2007), concerning having committed the number or type of traffic-related offenses outlined in the statute.