**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a1010n.06**

**No. 13-5349**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 03, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| DAYNEL L. RODRIGUEZ-PENTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  COOK and STRANCH, Circuit Judges; CARR, District Judge.[*]

COOK, Circuit Judge.  Daynel L. Rodriguez-Penton appeals his conviction and sentence for conspiracy to distribute and possess with intent to distribute Oxycodone, *see* 21 U.S.C. §§ 846, 841(b)(1)(C).  He argues that his guilty plea was not knowing and voluntary because the district court did not inform him that a conviction would subject him to deportation.  He also argues that, in making the drug-quantity finding to calculate his sentencing guidelines range, the district court improperly credited a witness's testimony.  For the following reasons, we affirm.

I.

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

Rodriguez-Penton, a Cuban citizen and permanent resident alien, pleaded guilty to his charges without a plea agreement. The parties dispute his likelihood of deportation as a result of his conviction, but they agree that the judge accepted his plea without advising him of that possible consequence.

At sentencing, the district court found Rodriguez-Penton accountable for about 290 grams of Oxycodone. (*See* R. 78, Sent. Tr. at 44, 48.) In making this calculation, the court relied partly on testimony from Officer Jerry Nieves of the Louisville Metro Police Department. Officer Nieves testified that he translated for Rodriguez-Penton during a post-arrest interview, in which Rodriguez-Penton confessed to handling various transactions with two co-conspirators. The court's drug-quantity finding corresponded with a base offense level of 32, *see* U.S.S.G. §§ 2D1.1(a)(5), (c)(4) & cmt. n.8(A), that the court reduced to 31 after adjustments. That offense level, combined with a category II criminal history, yielded a range of 121 to 151 months' imprisonment. The court sentenced him to 121 months.

## II.

On appeal Rodriguez-Penton contends that the district court violated Federal Rule of Criminal Procedure 11 and the Due Process Clause by accepting his guilty plea without informing him of the possibility of deportation. We review for plain error because he did not object during the plea colloquy in the district court. *See United States v. Hogg*, 723 F.3d 730, 737 (6th Cir. 2013).

A plain error is a clear or obvious one. *United States v. Olano*, 507 U.S. 725, 732–34 (1993); *United States v. Murdock*, 398 F.3d 491, 497 (6th Cir. 2005).

We already rejected the argument that a district court must inform a defendant of the possible deportation consequences of pleading guilty. *United States v. El-Nobani*, 287 F.3d 417 (6th Cir. 2002). In *El-Nobani*, we acknowledged that a district court may not accept an unknowing or involuntary guilty plea. *See id*. at 421 (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)). "A 'defendant need only be aware of the *direct* consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible *collateral* consequences of the plea.'" *Id.* at 421 (citation omitted). Collateral consequences include the possibility of deportation because "it is clear that deportation is not within the control and responsibility of the district court." *Id.* at 421. Accordingly, a defendant knowingly and voluntarily pleads guilty even without knowledge of deportation consequences. *Id*.

Rodriguez-Penton fails to distinguish *El-Nobani*. Instead, he argues that the Supreme Court overruled *El-Nobani* in *Padilla v. Kentucky*, 559 U.S. 356 (2010). *Padilla* addressed an *attorney's* obligations under the Sixth Amendment, however, and not a *court's* obligations under the Due Process Clause of the Fifth Amendment. The Court rejected Kentucky's test for ineffective assistance of counsel, which, like Kentucky's test for a knowing and voluntary guilty plea, guaranteed that a defendant know of only direct, as opposed to collateral, consequences. *See id.* at 365–66. The "reasonableness" standard for effectiveness established in *Strickland v. Washington*,

466 U.S. 668 (1984), according to the Court, does not distinguish between direct and indirect consequences in the deportation context. *See Padilla*, 559 U.S. at 365–66. And a reasonable attorney informs his client of *all* the "succinct, clear, and explicit" deportation consequences of the guilty plea. *Id*. at 368.

At least two other federal circuits view *Padilla* as bearing on counsel's Sixth Amendment obligations and not on a district judge's obligation to ensure a plea's validity under the Due Process Clause. *United States v. Delgado-Ramos*, 635 F.3d 1237, 1241 (9th Cir. 2011); *see also United States v. Nicholson,* 676 F.3d 376, 381 n.3 (4th Cir. 2012). Those courts reasoned that *Padilla* limited its holding to the Sixth Amendment context. *See Nicholson*, 676 F.3d at 381 n.3; *Delgado-Ramos*, 635 F.3d at 1240–41. And a panel of this court has reached the same conclusion. *United States v. Rodriguez-Gonzales*, No. 12-3735, 2013 WL 5911768, at \*2 (6th Cir. Nov. 4, 2013). Moreover, though the Advisory Committee on Criminal Rules proposes an amendment to Rule 11 to include a "generic warning" of deportation risks in the plea colloquy, the committee also notes that "*Padilla* was based solely on the constitutional duty of defense counsel, and it does not speak to the duty of judges." REPORT OF THE ADVISORY COMMITTEE ON CRIMINAL RULES at 2–3 (Dec. 8, 2010), *available at* www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/CR12-2010.pdf. Another circuit mentioned that "*Padilla* may create some uncertainty as to the usefulness of categorizing certain consequences as either 'direct' or 'collateral' in the Fifth Amendment context." *United States v. Youngs,* 687 F.3d 56, 62 (2d Cir. 2012) (emphasis omitted). But that court went on to conclude that, irrespective of *Padilla*, a district court's due-process obligations to inform a

defendant about civil commitment remains unaffected. *Id.* And the Fifth Circuit, declining to address whether *Padilla* affects its "established jurisprudence that a district court is not required to advise a defendant of the immigration consequences of a guilty plea," concluded that such an error "is not clear or obvious" and thus not plain error. *United States v. De La Cruz-Trejo*, 518 F. App'x 286, 286–87 (5th Cir. 2013).

Persuaded by these cases, we discern no clear or obvious error by the district court. Case law supports the notion that the Sixth Amendment provides more protection than the Due Process Clause in this context. *See Youngs*, 687 F.3d at 62 ("These Sixth Amendment responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the responsibilities of a court under the Fifth Amendment." (internal citation omitted)); *cf. Graham v. Connor*, 490 U.S. 386, 395 (1989) (cautioning against invoking due-process principles when the Constitution "provides an explicit textual source of constitutional protection"). In the due-process context, the Supreme Court directs courts only to ensure that defendants understand the direct consequences—giving up various trial rights, for example—of pleading guilty. *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) (noting that courts must determine whether a plea is knowing and voluntary because "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees"). In right-to-counsel cases, the Court demands more: objectively reasonable counsel, as measured by the prevailing standards of the legal community. *See Strickland*, 466 U.S. at 688. This duty, according to the Court, includes informing

defendants of the "succinct, clear, and explicit" deportation consequences of the guilty plea. *Padilla*, 559 U.S. at 368. The Court put the onus on counsel, not on sentencing judges.

III.

Rodriguez-Penton also urges us to find clear error by the district court in its finding of the drug quantity premised on faulty translation by Officer Nieves of Rodriguez-Penton's confession. Given that Officer Nieves testified to growing up in Puerto Rico and primarily speaking Spanish (R. 78, Sent. Tr. at 23), in the absence of a showing of some basis for the claim, we find no clear error. *See United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007). Rodriguez-Penton also complains that the judge credited Officer Nieves's testimony but rejected a federal agent's unrelated testimony. But just because the court declined to credit one witness's testimony does not mean the court erred by crediting another's. Rodriguez-Penton offers no specific reason to second-guess the judge's credibility or drug-quantity findings.

IV.

For these reasons, we AFFIRM the judgment of the district court.